# BANK OF SHAW *v.* RANSOM.

### [73 South. 280, Division B.]

1. BANKS AND BANKING. *Collections. Relation between bank and depositor for collection. Duty to collect in money. Time of payment. Failure to collect. Notice.*

   The collecting bank is the agent of the depositors of the claims for collection and it is the duty of such collecting bank to collect in money.

2. SAME.

   A collecting bank cannot extend the time of payment.

3. COLLECTION. *Failure to collect. Notice.*

   A collecting bank must use diligence to protect parties who intrust them with the collection of commercial paper; and such bank, knowing of the depressed financial condition of the debtor, is delinquent in its duty if it neglects to inform its customers of such vital condition, and fails to take vigorous methods under the circumstances to secure payment, and if loss occurs by its negligence to exercise that degreee of skill, care and diligence which the nature of its undertaking calls for, with reference to the time, place and circumstances surrounding the undertaking, it will incur liability to its principal for the loss sustained.

APPEAL from the circuit court of Boliver county. HON. W. A. ALCORN, Jr. Judge.

Suit by W. A. Ransom against the Bank of Shaw. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Cutrer & Johnson,* for appellant.

The question presented by this record briefly stated is, if a bank receives for collection a check drawn against another bank in the same town during the afternoon and on that afternoon presents the check for payment and payment is refused whereupon the collecting bank protests the check on the following day upon which day

the bank against which the check is drawn fails, is the collecting bank liable to the payee of the check in damages for the amount of the check notwithstanding the fact that both the drawee and payee of the check had actual knowledge of its dishonor and of the failure of the bank within twenty-four hours after the dishonor, and notwithstanding the further fact that at the time of the dishonor the bank against which the check was drawn was hopelessly insolvent.

But for the attitude of the learned trial court it would occur to us that to simply state this proposition would be to answer it in the negative. The defense here relies upon several distinct grounds of defense and we will discuss them in the following order:

First, that the check was not such a paper as is required by the commercial law to be protested in order to hold any party to the check for which reason there can be no liability upon a collecting bank for failing to protest a check unless it be shown that an actual damage was sustained because of the failure to protest.

Second, that the purpose of protest is to give notice of the dishonor of a piece of paper and where actual notice of this dishonor is had prior to the time when notice by protest could have been received, the failure to protest will not create a liability except where a special damage can be shown to have resulted from the failure to protest.

Third, that the state bank was hopelessly insolvent and entirely without funds on the day the check reached Shaw; that for this reason notice and protest would not have helped appellant.

Fourth, that the evidence fails to show that the plaintiff who is the appellee here, sustained any sort of damages because of the failure on the part of the collecting bank to protest the check.

The trial court took the position that the failure on the part of the collecting bank to protest the check, on the afternoon of December 20th was an act of negli-

gence in itself and that this negligence was the cause of loss to the plaintiff. We confess our inability to follow the trial court in any line of reasoning which reaches this conclusion. We might assume that the failure on the part of the bank of Shaw to protest the check on the evening of December 20th was an act of negligence, still we submit it did not follow that the Bank of Shaw thereby became liable to Ransom because nowhere in the record does it appear that the failure on the part of the Bank of Shaw to protest the check was either the proximate or the remote cause of any damage to Ransom. Magee on Banks and Banking (2 Ed.), page 211, article 276; *West Branch Bank* v. *Fulmer,* 45 Am. Dec. 651; *Bank of Rochester* v. *Montehath,* 43 Am. Dec. 681.

We next submit that had the check been duly protested neither Ransom or Scott could have done anything other than what was done. We also submit that a collecting bank is not liable for the failure to present and make demand for payment of a check and for failure to protest where the bank upon which the check is drawn is without funds. "Second Ransom Commercial paper, section 1347; *Rancom* v. *Wheeler,* 12 Abb. Proc. (N. Y.), page 139, 7 Cen. Dig, pages 1463-66.

Where a bank receives a check for collection and presents it upon the next day after receiving it, this has been repeatedly held to be presentation within a reasonable time to hold both drawee and endorser. *Veazie Bank* v. *Winn,* 46 Maine '60, 7 Cent. 1466; Dec. Dig. by Bills and Notes, section 402; *Anderson* v. *Gill,* 47 Asr. 402; *First National Bank* v. *Buchanan,* 27 L. R. A. 322; *Noble* v. *Doughten,* 3 L. R. A. (N. S.), 1167. Finally, we submit that there is nothing at all in the evidence tending to show liability on the part of the Bank of Shaw but even if there was, the question of whether or not the Bank of Shaw was guilty of negligence and as to whether or not this negligence was the proximate cause of loss to Ransom should have been

properly submitted as a question of fact to be determined by the jury.

A collecting bank is only required to use care and diligence in the collection of a check and is not liable to the payee of the check unless the payee can show that the collecting bank was guilty of negligence and that such negligence was the proximate cause of the damage.

*Thos. S. Owen,* and *Thos. B. Lytle,* for appellee.

First, the Bank of Shaw, the appellant, when it received the check for collection, was the agent of the appellee for the collection of the check.

Second, if an agent is negligent in the handling of the principal's business to that extent that causes loss to the principal, the agent will be responsible for the loss.

Third, when a bank presents a check to the payee bank for payment it is its duty to either receive money in payment of the check or to immediately protest the check and give the necessary notice to the parties in interest.

Fourth, when a bank presents a check for collection, it can only receive money in payment of the check, and if it receives any other thing than money it does so at its peril.

Fifth, when a bank presents a check to the payee bank for payment and the payee bank induces the bank presenting it to grant an extension or accept things other than money, the collecting bank extending the credit receives the exchange or other thing taken in payment as its own and not as the property of its principal for whom it is acting as agent.

Under the first heading, to-wit: that the Bank of Shaw was the agent of the appellee in collecting of the check, we refer the court to 5 Cyc. 493, subsection "B," where the rule is stated as follows: "Generally the depositor is the owner of the checks and other paper deposited by him for collection, and the bank performs

the service of collecting as his agent. While this relationship in many cases is created by endorsement and deposit of the paper without other action, in others it is created by special agreement and endorsement of the paper. In making collection for nondeposits, the bank acts as an agent until the completion of the collection and return of the proceeds to the employer.'' 148 U. S. 50, 27 L. Ed. 363.

In 7 C. J. 597, the rule is stated as follows: ''As a general rule checks and other papers deposited in any bank for collection remain the property of the depositor, and the bank performs the service of collecting as his agent.''

The Bank of Shaw being the agent of Mr. Ransom, a non-depositor, for the collection of this check, received it on the 20th of December and presented it to the First State Bank of Shaw the payee, for payment. When this was done it was the duty of the appellant to collect the proceeds of the check and to receive only the money. 7 C. J. 614, 615; Moss on Banks & Banking, sec. 242; Magee on Banks & Banking, sec. 277; 5 Cyc. 505; Secs. B. and C. Am. Ann. Cases 1912-B, 115; *Essex County Nat'l Bank* v. *The Bank,* 8 Fed. Cases, 789. Case 4532; *Bradley Lbr. Co.* v. *Bradley County Bank,* 206 Fed. 41; *Nat'l Life Ins. Co.* v. *Mather,* 118 Ill. 491; *Whitney* v. *Esson,* 99 Mass. 308; *Nat'l Bank of Commerce* v. *Am. Exchange Bank,* 151 Mo. 320; *Middling Nat'l Bank* v. *Brightwell,* 148 Mo. 351; *Lander* v. *Traders Bank,* 118 Mo. App. 356; *Gowling* v. *American Express Co.,* 102 Mo. App. 366; *Donogh* v. *Gillespie,* 21 Ont. A. 292; *Entigo Bank* v. *Union Trust Co.,* 149 Ill. 343; *Brown* v. *Leckie,* 43 Ill. 497; *Bickley* v. *Chicago First Nat'l Bank,* 42 Ill. 238; *Libby* v. *Hopkins,* 104 U. S. 303, 26 L. Ed. 769; *Chaney* v. *Libby,* 134 U. S. 68; *Omaha Nat'l Bank* v. *Kipper,* 82 N. W. 102; *Bank & Trust Co.* v. *Thornton,* 174 Fed. 752.

When this collection was presented to the first state Bank of Shaw and the same was not paid, the Bank of

Shaw, being the agent of the appellee, confesses through the testimony of its cashier that they knew of its insolvent condition, and that being true, it became necessary for them to use every effort to collect the check in money, or to immediately notify the maker and its principal.

The rule is stated by the supreme court of West Virginia in *Pinkney* v. *Canawa Valley Bank,* 68 W. Va. 254, to be as follows: "A collecting bank, knowing of the depressed financial condition of the debtor, is delinquent in its duty if it neglects to inform its customers of such vital condition and fails to take vigorous methods under the circumstances to secure payment and if loss occurs by its negligence to exercise that degree of skill, care and diligence which the nature of its undertaking calls for with reference to the time, place and circumstances surrounding the undertaking, it will incur liability to its principal for the loss sustained."

In this instance the appellant was the agent of the appellee; it confesses that it knew the depressed financial condition of the First State Bank, and knew that the Exchange which was given it by the First State Bank in clearance was not good and would not be until possibly the next day, and yet, it took no steps to protest the check, to notify the principal by wire or otherwise on the 20th, and took no steps to notify the maker of the check who resided four miles from its place of business, with a telephone in his house and one in each bank, and with two mails a day between the two places, until after the failure of the First State Bank, more than twenty-four hours after the receipt of this check for collection, and presented it for payment and did not receive payment.

The duty of a bank when it receives paper for collection is to use due diligence in making the collection, particularly with regard to presentment, protest and the like.

Magee on Banks & Banking, at page 506, states the rule as follows:

"The general rule is again stated, that the bank in receiving a collection must use ordinary care and diligence towards its collection. The diligence and care required depends largely upon the circumstances arising in each case."

Magee on Banks & Banking, section 275, referring to the presentment of checks, lays the rule down as follows: "It must be presented within a reasonable time after its receipt for collection, and as to what constitutes a reasonable time depends upon the circumstances of each case."

Section 277 of the same work lays down the further rule as follows: "A bank is authorized to receive money only. If it receives checks, drafts or other evidence of the debt, by doing so it takes them at its own risk and will be held responsible in money to the owner of the collection."

It will be remembered that a check, when presented, is different from a note; it has no days of grace, but the same must be paid when presented, and the court in *Bank of Utica* v. *Bank of New York,* 9 N. Y. 582, states the rule as follows: "A collecting agent has no right to receive any sort of explicit and unequivocal acceptance without giving notice to the owner as in case of non-acceptance, and he will be liable for any loss the owner may sustain in consequence of his neglect so to do."

A bank having a check for collection has no authority to grant an extension of credit to the payee bank, and if it does so the credit is its credit and not that of the customer. Ruling Case Law, p. 618, section 246.

5 Cyc. on page 505, section 5, states the rule as follows: "The collecting bank has no authority to renew the debtor's obligation or to give him an extension unless expressly authorized."

It will thus be seen that when the Bank of Shaw presented the check and did not receive the cash but extended the time of payment until the next day they did so without authority of law and the credit that they extended was their credit and not that of Mr. Ransom.

The error assigned by appellant bank, through its learned counsel, may be condensed in one statement, to-wit: the *nisi* court committed error on the facts proven before it and contained in the record here, in directing a verdict for appellee.

In order that the court may not have the issue between the parties paralyzed and totally devitalized by the statement of the legal proposition, as contained in the brief of counsel for appellant, it is deemed proper here to direct the court's attention to the only issue arising from the pleadings under the facts in this cause. This issue should be grouped under three heads, as follows: 1. That there was an actual payment by the drawee bank to appellant bank of the check in question; or 2. That the acts and conduct of appellant bank in handling said check with the drawee bank were such as that by operation of law the same amounted to a payment thereof; or 3. That the conduct and action of the appellant bank in its transactions with the drawee bank amounted to such gross negligence as to discharge the original maker of said check in question, thereby fixing the liability to appellee for the payment of said check, upon the appellant bank.

The appellant bank utterly disregarded in said transactions its legal duties as the collecting agency and totally failed to perform the duties imposed upon it as such by law.

Discussing these matters under the heads designated, counsel will now call the court's attention to the first

proposition raised herein, which is: "That there was an actual payment by the drawee bank to appellant bank of the check in question." *Bank of Utica* v. *Bank of New York*, 9 N. Y. 582; *Kirkman* v. *Bank*, 26 App. Div. (N. Y.) 110; *Bank of Pennsylvania* v. *Bank of New York*, 89 N. Y. 412.

Recurring now to the second proposition, which is "that the acts and conduct of appellant bank in handling said check with the drawee bank were such as that by operation of law the same amounted to a payment thereof."

Counsel will undertake to show to the honorable court that the acts of the appellant bank amounted to a payment by reason of its said conduct and acts in handling said check. Morse on Banks and Banking, sec. 240; Cyc. page 509; 132 Penn. St. 118; *Bank* v. *Ashworth*, 123 Penn. St. 212; 13 Iowa, 256; *Bowling* v. *Arthur*, 34 Miss. 41; *Bank* v. *Lane*, 52 Miss. 677. Recurring now to the last proposition, which is as follows: "That the conduct and action of the appellant bank in its transactions with the drawee bank amounted to such gross negligence as to discharge the original maker of said check in question, thereby fixing the liability to appellee for the payment of said check upon the appellant bank."

The court's attention is directed to the case of *Pinkney* v. *Bank*, reported in 680 Va. 254; *Exchange Bank* v. *Bank of West Virginia*, 132 Mass. 147; *Bank* v. *Kenan*, 76 N. C. 340. In associate's brief filed herein many authorities are cited, conclusively demonstrating to the court on a casual perusal thereof the propositions laid down in this brief.

Counsel strenuously insists that there was no error committed by the *nisi* court and insist that its judgment should be affirmed; and with the suggestions herein made, counsel now remains content.

COOK, P. J., delivered the opinion of the court.

The appellant is a banking corporation, and was doing a regular banking business at Shaw. In the same town was another bank called the State Bank of Shaw. Appellee owned a plantation four miles south of Shaw, which he had leased to one T. R. Scott. On December 13, 1911, T. R. Scott was indebted to appellee in the sum of two thousand five hundred and fifty dollars, and, having at that time more than that amount on deposit in the State Bank of Shaw, drew his check for that amount payable to appellee, and mailed same to appellee at Murfreesboro, Tenn. Appellee received the check in due course of mail, and he placed the same with his home bank for collection. In the due course of business the bank at Murfreesboro forwarded the check to a Nashville bank for collection, and that bank in turn, forwarded the check to a New Orleans bank for collection, and the last-named bank forwarded same to the appellant bank on the 18th day of December. The appellant bank received the check for collection on the 19th or 20th of December, 1911. When this check was received by the appellant bank, the executive officers of the bank were advised that the State Bank, the drawee, was probably in financial straits; in fact, from the information in their hands, the appellant believed that the State Bank was hopelessly insolvent.

It was the custom of the two banks of Shaw to make clearances each day. The debtor bank would then give to the creditor bank a check to cover the balance due on clearance. In this instance the appellant, it seems, was unwilling to take the check of the State Bank in settlement of the balance, but it nevertheless appears that the check in question was taken and was stamped paid by the appellant, but it was not delivered to the State Bank. The appellant's defense seems to be that it refused to take the check of the

State Bank in payment, but merely received it to ascertain whether the Memphis Bank, on which the exchange was drawn, would pay it. The exchange was not forwarded to the Memphis bank, but the next day the appellant protested the check which is the subject of this controversy. The reason assigned for not protesting promptly was that the appellant hoped that the officers of the bank would come to the rescue of the insolvent institution.

Mr. Ransom sued the appellant for the amount of the check, upon the theory that it was the duty of appellant to have protested the check when payment was refused, that the bank was charged with the duty to get the cash, or, failing to do so, it was the duty of the bank to immediately protest same, but if it chose to adopt another course, and receive the exchange tentatively, that the appellant thereby accepted the risk of this irregular procedure, and is liable to appellee for the full amount of the check.

The appellant contended that Mr. Ransom was notified of the nonpayment of the check long before he could have received notice of protest if the appellant had promptly protested the check; in other words, that the course adopted by appellant was the readiest means to advise Mr. Ransom that the check could not be collected, and the regular way, had it been followed, would not have afforded any way through which Mr. Ransom could have saved himself.

The record shows that Mr. Scott, the drawer of the check, lived within four miles of the town of Shaw; that there were two daily mails between Mr. Scott's post office and the Shaw office; that there was telephone connection between Mr. Scott's home and the office of appellant; yet, with the check in its hands for collection, and with knowledge that the payee bank had not paid the check on presentation, and believing that the exchange accepted by it would most probably not be paid, the collecting bank nevertheless failed to

protest and failed to take any steps to notify Mr. Ransom or Mr. Scott of the situation. The bank took the exchange and waited for results.

With these facts before the trial court, the jury were peremptorily instructed to find a verdict for the plaintiff, Mr. Ransom, against the defendant, and defendant appealed to this court.

The collecting bank is the agent of the depositor of the claim for collection. 7 C. J. 54. It is the duty of the collecting bank to collect in money. 7. 614, 615, and authorities there cited.

The supreme court of West Virginia lays down the following rule controlling situations like the one mirrored by this record, viz.:

"A collecting bank, knowing of the depressed financial condition of the debtor, is delinquent in its duty if it neglects to inform its customer of such vital condition, and fails to take vigorous methods under the circumstances to secure payment, and if loss occurs by its negligence to exercise that degree of skill, care, and diligence which the nature of its undertaking calls for, with reference to the time, place, and circumstances surrounding the undertaking, it will incur liability to its principal for the loss sustained. *Pinkney* v. *Bank,* 68 W. Va. 254, 69 S. E. 1012, 32 L. R. A. (N. S.) 987, Ann. Cas. 1912B, 115.

A collecting bank cannot extend the time of payment. R. C. L.; 5 Cyc. 505.

The authorities are numerous and uniform to the effect that collecting banks must use diligence to protect parties who intrust them with the collection of commercial paper. This is elementary law, and we do not deem it necessary to cite authorities to support the obvious.

We have stated the recorded facts as favorable to appellant as possible. There is much evidence less favorable to its contention. There can be no doubt that appellant was negligent; that it not only elected to

take chances by delaying the protest, but it is clear that its officers made no effort to protect the interest of Mr. Ransom.

In conclusion we desire to say that the acceptance of the exchange under the circumstances was dangerously near a payment so far as appellee's rights are concerned. It is unnecessary to go so far, however, as we think the judgment of the trial court was proper from the accumulated circumstances reflected in the record. This court has recently held that the collecting bank is the agent of the holder. *Mercantile Co.* v. *Armour Co.,* 109 Miss. 470, 69 So. 293.

*Affirmed.*