BANK OF FOREST *v.* CAPITAL NAT. BANK.

(Division B. April 8, 1935. Suggestion of Error Overruled, February 18, 1935.)

[160 So. 578. No. 31656.]

Wm. I. McKay, of Vicksburg, Watkins & Eager, of Jackson, and O. B. Triplett, Jr., of Forest, for appellant.

Alexander & Satterfield, of Jackson, for appellee.

Argued orally by **W. H. Watkins**, for appellant, and by **James Alexander**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

The Bank of Forest owned notes of the face value of fifteen thousand dollars of the Hiawatha Milling Company which it had acquired by purchase from the Capital National Bank. The Bank of Forest sent the notes at their maturity to the Capital National Bank for collection. The Capital National Bank credited the account of the Bank of Forest with the notes and accrued interest, and then took renewal notes from the Hiawatha Milling Company for the principal of the indebtedness due ninety days thereafter. It then charged the Bank of Forest with the renewal notes and forwarded them by mail to that bank. The Bank of Forest thereupon promptly rejected the renewal notes, claiming that the Capital National Bank had breached its duty to collect and credit, and demanding that the credit be restored on the books of the Capital National Bank. The Capital National Bank refused to do this, whereupon the Forest bank filed the bill in this case against the Capital National Bank to require it to restore the credit. The Capital National Bank, in its answer, claimed that it had the right to either collect or take renewal notes unless the Bank of Forest notified it in advance that it would not accept renewal notes, and that this was not done. The cause was heard on bill, answer, and proofs, resulting in a decree dismissing the bill. From that decree the Bank of Forest appeals to this court.

As we view the record, there is little conflict in the material evidence. The business relationship between the two banks was very intimate. The Bank of Forest was organized something like thirty years ago; the founders and organizers were then officers of the Capital State Bank, the predecessor of the Capital National Bank. During all these years the Bank of Forest carried a credit with the Capital National Bank, sometimes in a large amount. At times, the Forest bank held as much as two hundred fifty thousand dollars in notes acquired by it by purchase from the Capital National Bank. The Capital National Bank served a much larger territory than did the Forest bank. The practice that had been followed for many years was that when the Forest bank desired paper it would ask the Capital National Bank to furnish it. On other occasions the Capital National Bank would submit paper to the Forest bank for purchase; if it was accepted by the Forest bank, the Capital National Bank would charge it against the account of the Forest bank; if the Forest bank did not desire the paper it would refuse to accept it and return it to the Capital National Bank. The Capital National Bank did not indorse the paper nor otherwise guarantee its payment. The paper was often renewed about every ninety days, or four times a year. All this paper purchased by the Forest bank from the Capital National Bank was the paper of customers of the Capital National Bank and not of the Forest bank; the Capital National Bank had made the loans and passed on the security without consulting the Forest bank; the Forest bank was unknown to the makers of the paper. The understanding and practice between the two banks was that all this paper held by the Forest bank should be collected through the agency of the Capital National Bank, and if renewed that should also be done through the same agency.

The sharp issue of fact is whether or not the Forest bank had to accept renewals unless it notified the Capital National Bank in advance that it would not do so.

In sending these notes to the Capital National Bank at maturity the Forest bank invariably attached thereto a printed form which contained this language: "Collect and credit." Neither in the printed form nor in any accompanying letter from the Bank of Forest, shown by the evidence, was any authority given the Capital National Bank to renew the notes. The Forest bank stands on the contract, and also on the custom and usage, which it undertook to show and, we think, did show by a great preponderance of the evidence, that the Capital National Bank had no right to take renewal notes, and, if it did, it was optional with the Forest bank whether or not it would accept them. For authority to accept renewal of these notes and force the Forest bank to take them, the Capital National Bank relies largely on the fact that the Forest bank had owned them for something like three years, and during that period they had been renewed ten or twelve times through the agency of the Capital National Bank, and the renewals had been accepted by the Forest bank. The last renewal before the one in question was in November, 1929; the one involved was in February, 1930. The evidence shows that the Forest bank at first refused to accept the November, 1929, renewals, but later, for some reason, agreed to do so.

The witnesses for the Capital National Bank testified that the bank had a right to renew any of these notes held by the Forest bank sent for collection, unless the Forest bank notified the Capital National Bank in advance that it would not accept renewals. But, as above stated, the great preponderance of the evidence is that they were mistaken; the uncontradicted records of the Capital National Bank and the Forest bank show that they were mistaken. The correspondence between the two banks for two or three years prior to the transaction involved demonstrates that all this paper sent by the Forest bank to the Capital National Bank was for collection and credit alone, and that it was optional with the Bank of Forest whether or not it would accept renewals

when offered by the Capital National Bank. The Rice Furniture Company note, Felix W. Grant note, Mississippi Bond & Security Company note, the R. D. Peet note, and the Millsaps College note are examples. In the handling of all those notes the Forest bank did not notify the Capital National Bank to collect and not to renew, but used the usual form, ''collect and credit;'' renewals were taken by the Capital National Bank and offered to the Forest bank and were declined, whereupon the Capital National Bank took them and credited the account of the Forest bank with them. The correspondence with reference to the Millsaps College note shows what the bank had in mind. The Capital National Bank wrote the Forest bank enclosing the renewal note of the college for nine thousand dollars, ''subject to your acceptance.'' The Bank of Forest challenged the officers of the Capital National Bank who testified as witnesses in its behalf to point out in the correspondence between the banks a single instance in which the Capital National Bank claimed the right to force the Forest bank to take renewals under any circumstances whatsoever. There was no response to that challenge.

The opinion of the chancellor, which was made a part of the record, seems to place his decision denying relief on the ground that by virtue of the repeated renewals, ten or twelve, which the Bank of Forest had accepted, the authority of the Capital National Bank was enlarged to the extent that it had the right to collect or renew. In other words, it had become a custom between the two banks as to these particular notes, and the Bank of Forest was bound by that custom. The Capital National Bank seems to rely on that custom, and, in addition, that the evidence was sufficient to show that, unless the Forest bank notified it in advance, it had the right to either collect or renew. A collecting bank has no authority to renew the debtor's obligation, nor to give him an extension, unless expressly authorized. 7 C. J. 612; Bank of Shaw v. Ransom, 112 Miss. 440, 73 So. 280.

As shown, all this paper, without exception, was sent to the Capital National Bank by the Forest bank "for collection and credit." This was the contract between the parties. The usage of repeated renewals could not operate to set aside the plain contract. Usage and custom cannot be proved for the purpose of contradicting the express terms of a contract free from ambiguity, or to make the legal rights of parties to the contract other than expressed by its terms. "When the terms of a contract are clear, unambiguous, and valid, they must prevail, and no evidence of custom can be permitted to change them." Postal Telegraph-Cable Co. v. Willis, 93 Miss. 540, 47 So. 380, 381; 17 C. J. 512.

It follows from what has been said that when the Capital National Bank took these notes for collection and credit that was the extent of its authority. It had no right to accept renewals, unless theretofore expressly authorized so to do. In other words, it breached its contract.

Now the question is, What is the extent of its liability? Is it liable to the Bank of Forest for the face value of the notes, or for their real value? The Forest bank contends that it is the face value, regardless of the real value, and, to sustain that position, relies on Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 298, 68 L. Ed. 617, 31 A. L. R. 1261; Bank of Shaw v. Ransom, 112 Miss. 440, 73 So. 280. It was held in both of those cases that a collecting bank had no authority to accept for the debt of its principal anything but legal tender. In the Malloy case the court said that the rule applied to a bank receiving commercial paper for collection and, if such bank accepts the check of the party bound to make payment and surrenders the paper, it is liable to the owner "for any resulting loss." Both of those cases tend to sustain the contention of the Bank of Forest that the measure of liability of the Capital National Bank is the face value of the notes; however,

the identical question here involved was not passed on in those cases.

This case is unusual in many of its aspects. The relation of these two banks in the handling of this paper was not that ordinarily existing between banks acting as collecting agents for each other. Although the Forest bank was not exactly a subsidiary of the Capital National Bank, it was the next thing to that. As shown, it kept a large deposit in the Capital National Bank and depended on the Capital National Bank, to a very large extent, to invest its surplus funds in commercial paper. The Bank of Forest accepted most of the renewals offered it by the Capital National Bank, in fact a very large majority of them.

It was set out in the bill in this case, and admitted by the answer, that the Hiawatha Milling Company was adjudged a bankrupt within three months after the renewals, and its affairs finally wound up in the bankruptcy court, and that the general creditors received only about five per cent of their claims. The security up for these milling company notes was worthless. The evidence was not addressed to the question of the real value of the notes at the time the renewals were taken. The chancellor did not reach the question as to the extent of the liability of the Capital National Bank because he held that there was no liability at all, either for the face value of the notes or their actual value.

We hold that under this record there is liability on the part of the Capital National Bank, but we leave open the question as to the extent of the liability and reverse the decree and remand the cause for the reformation of the pleadings and the development of the case to that end, if the parties deem it necessary.

Reversed and remanded.