BANK OF FOREST *v.* CAPITAL NAT. BANK *et al.*

(Division A.   June 15, 1936.   Suggestion of Error Overruled Oct. 5, 1936.)

[169 So. 193.   No. 32199.]

164

See, also, 173 Miss. 99, 160 So. 578, 101 A. L. R. 589.

**Wm. I. McKay,** of Vicksburg, **O. B. Triplett, Jr.,** of Forest, and **Lotterhos & Travis,** of Jackson, for appellant.

Alexander & Satterfield, of Jackson, for appellee.

174

Argued orally by **Fred Lotterhos**, for appellant, and **James Alexander**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

This is the second appearance of this case in this court. On the former appeal we said: "This case is unusual in many of its aspects," to which we may now add that it became more so after its return to the court below. It began with a bill in equity seeking the cancellation of a charge on the appellee bank's books against the appellant for three promissory notes of the Hiawatha Milling Company, which the appellee bank had forwarded to the appellant for purchase by it, which

notes the appellant rejected, and requested the cancellation of the charge therefor against it. Without any amendment of the bill of complaint the case was proceeded with on the second trial as if the question at issue was the liability vel non of the appellee bank for a loss claimed to have been sustained by the appellant because of the method pursued by the appellee bank in dealing with three notes of the Hiawatha Milling Company forwarded by the appellant to it with instructions to collect and credit to the appellant.

The appellant's bill of complaint alleges, in substance, that on and prior to February 21, 1930, the complainant was doing a general banking business at Forest, Miss., and had with the defendant bank at Jackson, Miss., a deposit to its credit. It frequently purchased from the defendant bank commercial paper, and on February 21, 1930, that bank without any request from the complainant so to do mailed the complainant three five thousand dollar notes of the Hiawatha Milling Company, each dated February 17 and due May 15, 1930, in a letter stating that it had charged the complainant's account therewith. The appellant declined to accept the notes, tendered them to the defendant bank, and demanded the cancellation of the charge to it therefor, which it refused to do. Afterwards the Hiawatha Milling Company was adjudged a bankrupt, and by agreement with the defendant bank that its rights herein would not be prejudiced thereby the appellant filed the notes in the bankruptcy proceeding, on the termination of which it received two dividends thereon aggregating seven hundred sixty dollars and ninety cents. During the year 1933 the defendant bank ceased to do business, entered into and is now in liquidation; because of this wrongful fifteen thousand dollar charge against it the complainant's account with the defendant bank was fourteen thousand two hundred thirty-nine dollars and ten cents less when it went into liquidation than it would have been had the fifteen thousand dollar charge not

been made; because of which the complainant received seven thousand one hundred nineteen dollars and fifty-five cents less from the liquidators when distributing the two dividends than it would have received had the fifteen thousand dollar charge to it not been made.

The prayer of the bill is: "That its (the complainant's) deposit account in and with the defendant bank be reformed and corrected, as of February 21, 1930, so as either to cancel said unlawful charge of $15,000.00, or to credit the same with said sum of $15,000.00, and to charge the same with said sum of $450.10 as of Dec. 8, 1930, and with the said sum of $310.80 as of Apr. 3, 1931, so as that, on the date the defendant bank went into liquidation, the complainant's deposit be increased by the sum of $14,239.10; that defendant be required to pay to complainant the sum of $7,119.55 in cash on such corrected deposit, and to pay complainant, on the basis of such corrected deposit, the same percentage of dividends as are paid to other depositors; that complainant be granted a mandatory injunction, commanding the defendants so to reform and correct said account and to make payments thereon as so reformed and corrected; that complainant be paid interest at the legal rate on the said sum of $7,119.55 to date of payments; and complainant prays for general relief." The bank's liquidators, A. B. Campbell, S. C. Hart, and J. T. Brown, together with the bank itself, were made defendants to the bill.

The defendants filed a joint answer to the bill, in which they admit that the defendant bank forwarded three Hiawatha Milling Company notes to the complainant and charged them to the complainant on its books; that the complainant refused to accept them, tendered them to the defendant bank, and demanded the cancellation of its charge against it therefor, and that the defendant bank refused to accede thereto; that thereafter the Hiawatha Milling Company was adjudged a bankrupt; and that the complainant, pursuant to its alleged agreement with the defendant bank, filed these notes in

the bankruptcy proceeding and received the alleged dividend thereon. The answer then proceeds to set forth, as what actually occurred, a state of facts very different from that alleged in the bill of complaint, which, in substance, is as follows: The complainant purchased from the defendant bank in 1927 three notes of the Hiawatha Milling Company of five thousand dollars each, on the maturity of which it forwarded them to the defendant bank, which took renewals therefor and forwarded them to the complainant which accepted them. This was in accord with the usual custom of the two banks in dealing with each other, and these notes were several times thus renewed. The last of these renewal notes of the Hiawatha Milling Company accepted by the complainant matured on February 21, 1930, on or about which date they were forwarded to the defendant bank and renewal notes therefor, due May 15, 1930, were accepted by the defendant bank in accordance with the usual custom of the two banks. When the notes that matured on February 21, 1930, were received by the defendant bank, in accordance with its usual custom, it credited the complainant therewith on its books of account, and when it received the renewal notes therefor from the Hiawatha Milling Company it charged the complainant therewith and forwarded the notes to it. The defendant bank did not intend, by crediting the complainant with the notes, to thereby become the purchaser thereof, both the credit and debit entries relative thereto being mere bookkeeping entries to preserve a record of what was done, all of which was known to the complainant. The answer then denies that the complainant's deposit was reduced by these bookkeeping entries, and that the complainant is entitled to the relief prayed for.

On the first trial no attempt was made by the complainant to prove the allegations of its bill of complaint, i. e., in substance, the defendant bank offered to

sell the complainant three notes of the Hiawatha Milling Company, which offer the complainant rejected, but nevertheless the defendant bank charged the complainant therewith. The issue then tried was whether the defendant bank had the right to deal with the Hiawatha Milling Company notes, which matured on February 21, 1930, in the manner set forth in its answer, and (it seems) if the defendant did not have that right, then what damage, if any, was sustained by the complainant thereby. Among other evidence introduced was the letter of instructions in which the complainant forwarded the notes to the defendant bank, which, in effect, was to "collect and credit" to the complainant. The court below rendered a decree holding that the defendant bank had the right to deal with the notes as it did and dismissed the bill of complaint. On appeal to this court that decree was reversed. Bank of Forest v. Capital National Bank, 173 Miss. 99, 160 So. 578, 581, 101 A. L. R. 589. The court then said: "The evidence was not addressed to the question of the real value of the notes at the time the renewals were taken. The chancellor did not reach the question as to the extent of the liability of the Capital National Bank because he held that there was no liability at all, either for the face value of the notes or their actual value. We hold that under this record there is liability on the part of the Capital National Bank, but we leave open the question as to the extent of the liability and reverse the decree and remand the cause for the reformation of the pleadings and the development of the case to that end, if the parties deem it necessary." No judgment of liability was there rendered against the appellees, but, as appears from the court's minutes, the case was remanded for a trial de novo.

On the return of the case to the court below, the complainant filed an amended bill of complaint, the first paragraph of which alleged that "the complainant re-

iterates its entire original bill of complaint, including the prayer thereof,'' and in subsequent paragraphs set forth, in substance, the prior dealings between the two banks as to the Hiawatha Milling Company notes, somewhat as set forth in the answer to the original bill, and that each time the complainant accepted renewals of the Hiawatha Milling Company notes taken by the defendant bank in lieu of others sent it by complainant for collection, the Hiawatha Milling Company was, to the defendant bank's knowledge, in serious financial difficulties, which bank failed to discharge its duty of advising the complainant thereof; and that if the complainant had known of the financial difficulties of the Hiawatha Milling Company it would not have accepted the renewal notes and could have then collected them, and prayed for a decree for the damage it thereby sustained. A demurrer to this amended bill was sustained, and the case proceeded to trial on the original bill, the answer thereto, and proof, resulting in the bill of complaint being again dismissed.

The first error assigned is the sustaining of the demurrer to the amendment to the original bill. The two grounds of this demurrer are that the amendment changes the scope and purpose of the original bill, and that the case was remanded by the Supreme Court ''for the purpose and sole purpose of ascertaining the damage, if any, that the complainant suffered by reason of the failure of the Capital National Bank to regard the technical instruction of the complainant in its letter for collection and credit of February 12th, 1930.''

No error was committed in sustaining this demurrer, for the amendment changed the scope and purpose of the original bill, presented new and different cause or causes of action, and prayed for relief different from that prayed for in the original bill—a complete departure therefrom. Griffith's Miss. Chancery Practice, sec. 389, et seq.; 21 C. J. 523; People's Bank v. Penning-

ton, 137 Miss. 653, at page 690, 102 So. 386, 103 So. 144, at page 146. The sole purpose of the original bill was to correct an entry on the books of the defendant bank, which were then in the hands of its liquidators, charging the complainant with notes of the Hiawatha Milling Company which the defendant bank had offered to sell the complainant and which offer the complainant had refused. The amendment set forth distinct and different cause or causes of action growing out of prior dealings between the two banks in which the liquidators of the defendant bank may or may not be interested, as to which we express no opinion.

It is true that when this court reversed the former decree and remanded the cause it said that the pleadings could be reformed if the parties so desired, but that suggestion, of course, only extended to such reformation as the parties were entitled to make under the rules of pleading and practice. Whether the complainant had the right to amend its bill of complaint so as to set forth its cause of action growing out of the charge by the appellee bank to the appellant of the renewal notes of the Hiawatha Milling Company, taken by the appellee bank in lieu of the notes of that company maturing on February 21, 1930, sent by the appellant to the appellee bank for collection, is not before us, and we express no opinion thereon.

After the demurrer to the original bill was sustained, the case proceeded to trial, as hereinbefore set forth, on the original pleadings. The complainant, as on the first trial, made no effort to prove the cause of action set forth in its bill of complaint, but the evidence of both complainant and defendants was directed to the violation vel non of the duty of the defendant bank to either collect or return to the complainant the notes of the Hiawatha Milling Company maturing on February 21, 1930, deposited with it by the complainant for that purpose, and if it violated this duty whether the fifteen

thousand dollar charge against the complainant on the books of the defendant bank should be canceled. This was not the issue tendered by the bill of complaint on facts therein stated, but is based on facts set forth in the answer thereto, in which connection see Griffith, op. cit., sec. 612; 21 C. J. 676. Without expressing any opinion on the propriety of the course here pursued, since the appellees did not object thereto but joined therein, we will proceed with the case on the assumption that it was tried on the correct issue.

On the former appeal this court held that the record then before it disclosed that the Capital National Bank was without authority to accept the renewal notes from the Hiawatha Milling Company; that the extent of its authority was to collect them and credit the appellant therewith. The evidence on the second trial as to liability is not materially, if at all, different from the evidence thereof on the first, so that we come at once to the measure of the appellant's damages and the proof thereof.

By accepting the notes for collection, the appellee bank became the agent of the appellant for that purpose, charged with the duty either of collecting the notes and crediting the appellant with the money so collected, or of returning them to the appellant. This duty it failed to discharge. See opinion on former appeal herein.

The appellees say that when the appellant declined to ratify its renewal of the notes, the appellant then had the right to so notify the Hiawatha Milling Company, the maker of the notes, and to demand from it the payment thereof; and should payment have been refused the appellant could have collected the notes by legal proceedings promptly instituted; from which it follows that the damages here claimed by the appellant were occasioned by its own negligence.

We will assume, but merely for the purpose of the ar-

gument, that the appellant had this right and could have collected the notes by prompt legal proceedings. Nevertheless, the appellant was under no obligation to the appellee bank so to do, for the unauthorized delivery of the notes by the appellee bank to the Hiawatha Milling Company, the maker thereof, was not a mere act of negligence, but was a conversion of the notes, and the appellant had the right to so treat it, for which the appellee bank became liable to the appellant for the value of the notes. Capitol State Bank v. Lane, 52 Miss. 677; 1 Mechem on Agency (2 Ed.), sec. 1257; 2 Restatement, Agency, sec. 402, par. (e), and comment (e) under section 426. This value is not absolutely determined, as the appellant contends, by the face of the notes. The purpose, which the law seeks to accomplish by giving an owner of property a right of action against one who by converting it deprives him thereof, is not to enrich the owner of the property at the expense of the converter, but to compensate him for the damages he sustained by the conversion, the measure of which, in the absence of circumstances warranting punitive damages, is the value of the property converted at the time of the conversion. Ingram Day Lumber Co. v. Robertson, 129 Miss. 365, 92 So. 289. There is a presumption that the maker of a note will pay it, consequently its value is prima facie that which appears on its face, but the note may be, in fact, worthless, or of less value than it appears on its face to be, consequently the party sought to be charged therewith has the right to overcome this prima facie presumption by showing that the note is of no value or of a less value than it appears to be on its face. 26 R. C. L. 1150. See, also, note to Ackerman v. Green, 6 Ann. Cas., at page 841.

Among the cases relied on by the appellant to support its contention that the face of the notes determine their value are Bank of Shaw v. Ransom, 112 Miss. 440, 73 So. 280, 281, People's Gin Co. v. Canal Bank & Trust

Co., 168 Miss. 630, 144 So. 858, 146 So. 308, and Federal Reserve Bank of Richmond v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261. In Capitol State Bank v. Lane, supra, a recovery for the face of the paper was allowed, but the court said: "If they [the drawers of the check] were insolvent, and that would make a difference, the bank should have shown it." The case is therefore authority only for the face of the paper being prima facie the amount of damages recoverable. In the Bank of Shaw Case, in which there was no conversion of the paper, a recovery for the face thereof was allowed. The court said that what there occurred "was dangerously near a payment," but it did not decide the case on that ground, but evidently 'on the ground that the plaintiff, because of the conduct of the collecting bank, had lost not only the ability to collect from the drawee of the check, but had also lost the right to collect it from the drawer thereof.

In People's Gin Co. v. Canal Bank & Trust Co. and Federal Reserve Bank of Richmond v. Malloy, the check deposited for collection was forwarded by the collecting bank through another bank direct to the drawee bank for collection and remittance to the bank from which it received the check. The drawee bank charged the check to account of the drawer, who then had sufficient funds on deposit with it to cover the check (in the Malloy Case, see the opinion of the trial court [(D. C.) 281 F. 997]). The drawee bank then forwarded to the bank from which it received the check its own check therefor, which check proved to be worthless. The check deposited for collection, therefore, had been paid, and the failure of the depositor to receive the amount collected therefor was caused by the negligence of one of the collecting banks.

There is no evidence, and we do not understand the parties to claim, that these Hiawatha Milling Company notes had a value other than what could have been col-

lected from that company thereon; the appellees' contention being, as we understand it, that the Hiawatha Milling Company was insolvent when the notes matured on February 21, 1930, which was less than four months prior to the filing of the petition on which it was adjudged a bankrupt.

The pertinent evidence bearing on this contention is, in substance, as follows: The notes were payable to "ourselves or bearer," and were indorsed by the Hiawatha Milling Company in blank; they were deposited with the appellee bank for collection on the 12th and, as hereinbefore stated, were payable on the 21st of February, 1930. The Hiawatha Milling Company then had ample property in this state out of which the notes could have been collected by legal process, and as it was a foreign corporation, an attachment could have been sued out and levied on the property, thereby fixing a lien thereon. If this were all the evidence contained, the actual value of the notes would be the face value thereof. But it further appears that on the 28th day of February, 1930, a petition was filed against the Hiawatha Milling Company by some of its creditors, alleging that it was insolvent, and praying that it be adjudged a bankrupt. An answer to this petition denied that the Hiawatha Milling Company was insolvent, but alleged its willingness to be adjudged a bankrupt. On the 22d day of May, 1930, a judgment was rendered by the federal court declaring the Hiawatha Milling Company a bankrupt without adjudicating its insolvency. This decree, therefore, does not determine the solvency or insolvency of the bankrupt at the time the petition was filed.

The National Bankruptcy Act of the United States, Code Ann., title 11, Bankruptcy, c. 7, sec. 107(c), provides: "A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by con-

fession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy.''

The schedules filed by the Hiawatha Milling Company in the bankruptcy proceeding were introduced in evidence by the appellant, and in order to prove the insolvency of the Hiawatha Milling Company for the time intervening between the maturity of the notes and the filing of the petition in bankruptcy, the court permitted the appellees, over the objection of the appellant, to introduce in evidence the report of the appraisers appointed in May and June, 1930, as to the value of the property, and the report of the trustee setting forth what he realized by a sale of the property and distributed to the bankrupt's creditors, and also to introduce in evidence, of which no complaint is made, that when the bankrupt petition was filed the Hiawatha Milling Company suspended operations, and held its property intact thereafter until it surrendered possession thereof under the bankruptcy proceeding.

The Supreme Court of the United States has not yet decided whether the report of the appraisers of a bankrupt's estate is admissible in evidence for the purpose of showing the value of the bankrupt's property prior to the filing of the petition in bankruptcy; and there seems to be some conflict in the state and lower federal court decisions relative thereto. But we agree with Remington in his treatise on Bankruptcy, vol. 4 (4 Ed.), sec. 1756, that such reports should not be admitted in evidence for that purpose. The appraisal of a bankrupt's estate ''is to secure for the benefit and protection of all

parties concerned a designation and estimation of the property which passes into the hands of the trustee, and for which, in the first instance, he is accountable.'' Remington, op. cit. vol. 6, sec. 2523. And the appraisal is made after the business of the bankrupt ceases to be a going concern. Moreover, by introducing their report, and not the appraisers themselves, the opposing litigant is deprived of the opportunity of cross-examining the appraisers, and ascertaining the method pursued by them in arriving at the value placed by them on the property. The report of the trustee was also inadmissible. Section 1 of the Bankruptcy Act (11 U. S. C. A. sec. 1) provides that ''a person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts.'' This fair valuation is not the value that would or did prevail at a sacrificed or forced sale. Remington, op. cit. vol. 4, sec. 1747 et seq.; Liberty National Bank of Roanoke v. Bear, 265 U. S. 365, 44 S. Ct. 499, 68 L. Ed. 1057, 3 A. B. R. (N. S.) 8.

The dividend in the bankruptcy proceeding received by the bankrupt's creditors would have been admissible in order to show what the appellant received from the trustee in bankruptcy on the renewal notes which were filed in that proceeding under the agreement hereinbefore set forth, but for the fact that the amount so received was admitted by the appellant, which amount we do not understand is challenged by the appellees.

But the appellant says that even if admissible in evidence these records do not disclose that the Hiawatha Milling Company was insolvent at the time the renewal notes were taken; that it appears from their report and other evidence that they failed to appraise and value a large part of the bankrupt's property. The evidence

disclosing this fact is not specifically pointed out by the appellant, and our examination of the record has failed to bring it to light. Should we be mistaken in this, we will be glad to re-examine that question on a proper and timely suggestion therefor, and if the appellant's contention should then appear to be true, we will dispose of the case in the light thereof.

Reversed and remanded.