## H. W. FOSTER v. L. C. WOOTEN.

1. SALE. *Personal property. Bill of sale executed on Sunday.*
   The execution on Sunday of a bill of sale of personal property, in pursuance of a sale made on Friday, does not affect the validity of the sale.

2. SAME. *Sunday. Executed contract. In pari delicto.*
   In such case, the property being delivered, a creditor of the seller cannot, by attachment, afterwards subject the property to his debt upon the ground that, the sale being a Sunday contract, the title did not pass to the purchaser. Granting this to be a Sunday contract, it being executed, the law in such cases is absolute non-action. *Block* v. *McMurry*, 56 Miss. 217.

3. ANIMALS. *Death of pending litigation.*
   A claimant bonding animals attached, who is without fault, is not liable for the death of the same pending the litigation.

FROM the circuit court of De Soto county.

HON. W. M. ROGERS, Judge.

In the latter part of 1888, L. D. Lewis and A. F. Foster jointly purchased on speculation a lot of Texas horses. Being unable to sell the horses, they took them to the place of H. W. Foster, mother of A. F. Foster, where they were kept for some time. On Friday, December 7, 1888, by agreement, the horses were divided, Lewis taking seven and A. F. Foster ten. Thereupon, on the same day, Lewis sold his horses to A. F. Foster for $280, of which amount $20 was paid in cash, this being all the money Foster had. The horses were delivered to Foster, and remained at his mother's place, which was his home. On the following Sunday Lewis went to see Foster and collected $35 more of the purchase-money, and at the same time executed and delivered to him a bill of sale for the seven horses, dated December 8, which was Saturday. At the request of Foster, it was drawn up by his mother. It recited the consideration, $280, as being "cash in hand paid." On Monday Foster, deeming the bill of sale invalid because executed on Sunday, applied for and obtained from Lewis another bill of sale. He still kept the horses at his mother's place,

and, being unable to otherwise dispose of them, sold them to his mother for $455, part payment of a debt of $870 he owed her. Mrs. Foster was not acquainted with Lewis, and before purchasing the horses she wrote to ascertain if he claimed any interest in them. On January 5 Lewis wrote her a letter stating that he had no interest, having sold to A. F. Foster. Lewis had then been paid in full. On January 24, 1889, A. F. Foster gave his mother a bill of sale for the horses, reciting therein the consideration of $455, and received credit for this amount on account, the horses being delivered to Mrs. Foster. The price paid by her was a fair one.

On February 7, 1889, the appellee, L. C. Wooten, sued out an attachment against said L. D. Lewis and A. F. Foster, based on a note signed by L. D. Lewis, dated November 15, 1888, payable to said L. C. Wooten, for $300. It was alleged by plaintiff in attachment that this note, while signed by Lewis alone, was a partnership obligation of Lewis and Foster, who were jointly interested in the purchase of the horses, and she obtained judgment against both. On said February 7, 1889, the seven horses sold by Lewis to Foster, and by him to Mrs. Foster, were seized under said attachment. Mrs. Foster interposed a claim for the horses and gave bond for the forthcoming of the same. On the trial of the claimant's issue the above facts were shown. It was also shown that the claimant had no knowledge of the indebtedness to the plaintiff, Mrs. Wooten, until the horses were attached. It was also shown that the plaintiff in attachment was a sister-in-law of the said L. D. Lewis, and that the debt of $300 for which she attached was for money borrowed to enable the said Lewis to pay his part in the original purchase of the horses. There were some other circumstances in evidence upon which counsel for appellee relies to show that the purchase by Mrs. Foster was fraudulent; but as the court makes no mention of this and decides the case alone upon the question as to the Sunday contract, upon which question it is manifest plaintiff recovered below, it is not deemed necessary to make any further statement of the facts.

The court gave several instructions for plaintiff and six for the

claimant. The third instruction for plaintiff is as follows : " The court instructs the jury that all sales of personal property, whether in writing or not, made upon Sunday, are void, and pass no title to the property." This was objected to by claimant.

From a judgment in favor of plaintiff the claimant appeals.

The opinion contains a further statement of the case.

*H. R. C. Foster* and *C. R. Boyce,* for appellant.

1. The court erred in excluding testimony offered by the claimant and in refusing instructions in her behalf.

2. The court erred in giving instructions for the plaintiff, particularly the third. This instruction is manifestly erroneous. There is no sort of evidence that the sale from Lewis to Foster was made on Sunday. The sale was made on Friday, when part of the price was paid and the horses were delivered. Therefore the instruction was not applicable and misled the jury. If there had been evidence showing a sale on Sunday, still the instruction would be erroneous. On this point see *Block* v. *McMurry,* 56 Miss. 217, and authorities there cited.

3. The great weight of the evidence, both direct and circumstantial, is against the verdict, and it should have been set aside. *Herron* v. *Bondurant,* 45 Miss. 683.

4. In any view, the verdict was excessive. Claimant should have been allowed credit for the value of both the horses that died.

*Calhoon & Green,* on the same side.

1. There is nowhere in the evidence any suggestion, much less proof, of fraud. Therefore it was improper to instruct the jury as to it. Certainly the verdict cannot stand on this ground.

2. Plaintiff's third instruction is erroneous and misleading, even if it announces a correct proposition in the abstract. The sale took place and was completed on Friday. The bill of sale executed on Sunday was simply a written history of what had previously transpired. If the sale had been made on Sunday, the defect was cured by the bill of sale executed on Monday. Both bills of sale were mere memorials of a past completed transaction. The motion for a new trial should have been sustained.

*Ira D. Oglesley*, for appellee.

1. The instructions given for the plaintiff are correct and not misleading. Those given for the claimant were liberal, and presented all that there was in her case.

2. The purchase by claimant from her son was contemporaneous with his purchase from Lewis on Sunday. The circumstances show this. It is submitted that the testimony sustains the verdict. The testimony of witnesses before a jury can only be very imperfectly brought before this court, and for that reason the court will be slow to disturb a verdict resting as this does on controverted questions of fact.

(Counsel made a lengthy review of the facts, contending that the purchase by the claimant was fraudulent; but, in view of the opinion of the court, which disposes of the case on another ground and does not allude to the question of fraud, this argument is not given.)

WOODS, C. J., delivered the opinion of the court.

The evidence showed quite clearly that the sale of the stock by L. D. Lewis to A. F. Foster, occurred on Friday. The execution of the bill of sale on the Sunday following was not the consummation of the sale : it was only the manufacture of the evidence of the antecedent sale. If we shall concede, however, that this sale took place on Sunday, we will still be constrained to hold that the third instruction for the plaintiff in attachment was improperly given. Any charge to the jury, considered as a mere abstract proposition, could not rightfully influence the verdict, looking at the uncontroverted facts of the case. This was an executed contract ; the stock had been delivered to A. F. Foster, and the purchase-price paid by him to L. D. Lewis, long before the attachment writ was levied. Grant, then, that the sale was made on Sunday, what is the rule of law on such state of facts? Nothing more than absolute non-action. It will give neither party to the contract any assistance, nor listen to any complaint. It will leave the parties where it finds them. That is the extent of the rule. It cannot be reasonably insisted that the seller of the stock, L. D. Lewis, could have made

any maintainable appeal to any court for the annulment of the trade, and the recovery of the stock. Equally in fault with the buyer, A. F. Foster, the law would decline to afford him any countenance, leaving him just where it had found him, and where his own act had placed him. With what show of reason can it be contended that the attaching-creditor of Lewis could take any step for the assertion of any claim to the stock, thus wrongfully sold on Sunday, which Lewis himself could not take? But this whole question has been too long and too firmly settled to be now disturbed. Neither Lewis, nor the attaching-creditor could dispossess the Sunday purchaser, or any purchaser under him. See *Block* v. *McMurry,* 56 Miss. 217, and cases there cited.

It follows, therefore, that the third instruction of the court below for plaintiff in attachment, to the effect that sales of personal property made upon Sunday are void and pass no title to the property, was erroneously given, and was misleading. Granting its correctness in the abstract, in the concrete it was eminently and unwarrantedly prejudicial to the claimant on the trial of this issue. It was doubtless regarded by the jury, and with reason, too, as informing them that the Sunday sale from L. D. Lewis to A. F. Foster being void, and as no title had passed thereby, that the title to the stock levied upon was still in said Lewis, and that said stock was therefore to be subjected to plaintiff's demand, and the issue found against the claimant, the sub-purchaser. This was altogether misleading. The proposition (though it was not the fact, as shown by the evidence) that the sale of the stock was made by L. D. Lewis to A. F. Foster on Sunday, had absolutely nothing to do with the case.

The contention of appellant as to the amount of the verdict, is likewise well taken. The jury returned a verdict for the full value of all the horses, though it was undisputed that the two best animals had died, pending the litigation, without fault on the part of claimant. The court partially remedied this error of the jury by requiring a *remittitur* of the price of one of the deceased animals, but appears to have taken no account of the other horse, shown to have died. The verdict therefore remained excessive.

*Reversed.*