POSTAL TELEGRAPH-CABLE COMPANY v. FLOYD WILLIS.

[47 South. 380.]

1. CUSTOM AND USAGE. *Contracts. Evidence.*
   When the terms of a contract are clear, unambiguous and valid, evidence of custom cannot be permitted to change them.
2. SAME. *Office of usage or custom.*
   The office of a usage or custom is to interpret the otherwise indeterminate intention of parties.
3. SAME. *Custom inadmissible to change law. Case.*
   Where plaintiff's correspondent delivered to a telegraph company a telegram, duly addressed and directed, accepting his telegraphic offer to sell cotton, the contract was thereby completed, and evidence of a custom in the cotton trade, requiring the actual delivery of the message to the addressee to complete the contract, is inadmissible.

FROM the circuit court of, first district, Hinds county.

HON. WILEY H. POTTER, Judge.

Willis, appellee, was plaintiff in the court below; the telegraph company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The facts are fully stated in the opinion of the court.

*W. R. Harper* and *Robert Lowry,* for appellant.

Even if defendant were negligent in its failure to deliver the message in question promptly, plaintiff suffered no loss thereby; whatever loss he did suffer, was caused by his own act in releasing Morrow from a perfectly valid contract. This question was raised on the trial in the lower court, first by a motion to exclude all evidence of such damage, which motion was overruled, and then by an instruction, which was refused.

There is now nothing better settled in the whole range of substantive law, than that the acceptance of Willis' offer was complete, and became a valid, existing contract when Morrow de-

livered his telegram of acceptance to the Postal Telegraph Company in Mobile, and having then and there become a binding contract, it was not in the power of Morrow to withdraw his acceptance, except by the consent of Willis. It is true, that this abstract rule of substantive law was only adopted and·accepted after many years of fierce conflict and discussion. But to-day this arbitrary rule stands accepted by every court. It is true, also, that one court sometimes gives one reason for it, and another, another reason, and that some text writers, and some judges, in their eagerness to give a reason for everything, have said that the reason of the rule is because the telegraph company became the agent of the maker of the offer, and the delivery of the telegram to the agent was a delivery to the principal. But we sumbit, that a cursory examination will convince any candid mind that such is not the reason of the rule. In the first place, it is absurd to say that the post-office and telegraph are the agents of those who use them. This court, like most others, expressly repudiated any such doctrine, in the *Shingleur case.* In the next place, the true reason is that all courts recognized that it was necessary to fix some time when a contract became complete under such circumstances, and after trying almost every other time, it was finally seen that the time of delivery at the point of acceptance worked the least injury to all, and after long years of wrangling and doubt and discussion, this rule arbitrarily fixing that time, has become to be almost universally accepted by the courts. The necessity for a fixed and arbitrary time, is the reason of the rule, and there is no other. And to-day no rule of substantive law is more generally or more broadly and firmly established and recognized throughout the world than this.

In the lower court plaintiff did not undertake to deny this rule of substantive law, but sought to evade and escape it, by offering to show that the cotton trade has some custom or rule of its own, that the acceptance of an offer did not become binding until the telegram of acceptance had been actually received.

In reference to the proof of a usage or custom, our own court, in the case of *Shackleford v. New Orleans, etc., R. Co.*, 37 Miss. 207, speaking of this question, well said:

"In the case of *Schooner Reeside*, 2 Sumner, 567, Judge Story thus expresses himself on this subject: 'I own myself no friend to the almost indiscriminate habit, of late years, of setting up particular usages or customs, in almost all kinds of business and trade, to control, vary, or annul the general liabilities of parties under the common law, as well as under the commercial law. It has long appeared to me, that there is no small danger in admitting such loose and inconclusive usages and customs, often unknown to particular parties, and always liable to great misunderstandings and misinterpretations and abuses, to outweigh the well-known and well-settled principles of law. And I rejoice to find that, of late years, the courts of law, both in England and in America, have been disposed to narrow the limits of the operation of such usages and customs, and to discountenance any further extension of them. The true and appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character.'

" 'It may also be admitted to ascertain the true meaning of a particular word or of particular words in a given instrument, when the word or words have various senses, some common, some qualified, and some technical, according to the subject matter to which they are applied.'

" 'We fully concur in the just views so expressed by Justice Story. The foundation of this whole doctrine of usage or custom, when applied to the dealings of men, is, that they are presumed to deal with each other, in reference to the known customs which have immemorially prevailed, either in that particular locality or everywhere, in relation to the subject of their dealings, and they are, therefore, presumed to intend that such

·custom shall be the law of their action. It must be an established custom, existing at the time and place of their dealing, and known to the parties. It must be certain, uniform, reasonable, and not contrary to law. 2 Greenleaf's Evid. 273, p. 251, .and numerous cases cited.

" 'These usages, many judges are of opinion, should be sparingly adopted by the courts as rules of law, and they are often founded on mere mistake, or on the want of enlarged and comprehensive views of the full bearing of principles. Their true office is to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of the contracts arising, not from express stipulation, but from mere implications and presumptions, and acts of a doubtful and equivocal ·character, and to fix and explain the meaning of words and expressions of doubtful or various senses. On this principle, the ·usage or habit of trade, or conduct of an individual, which is known to the person who deals with him, may be given in evidence to prove what was the contract between them.' . 2 Greenleaf's Ev. p. 251, and note 5.

"Both customs and usages must be proved by evidence of facts ·not mere. speculative opinions, and by witnesses who have had frequent and actual experience of the custom or usage, and do not speak from report alone. Ib. paragraph 252."

A careful reading of the testimony of Willis, on cross-examination, will show that he had never had or known of any such transaction where an acceptance of an offer had been withdrawn. It will clearly be seen that all of his direct testimony came from the confusion a layman would naturally fall into of not distinguishing between the withdrawal of an offer, and the withdrawal of the acceptance of an offer ; that he confused the right to withdraw an offer, with the right to withdraw an acceptance, and based his testimony thereon, is perfectly manifest from his cross-examination. We insist, that the proof of the usage in no essential respect, meets the requirement of our law as set out in the ·foregoing opinion, and as a matter of fact, do not believe that

any such usage exists even in the cotton trade, in reference to the acceptance of an offer. But we, a stranger, were surprised and had no opportunity to get evidence on this point, the same not having been pleaded.

But granted that the custom or usage were both properly pleaded, and sufficiently proved, still, it cannot avail plaintiff in the instant case. It is well settled as set out in the foregoing case, that the sole and only function of a usage is to explain, interpret, and add terms to an indefinite contract. It cannot in any degree affect the formation of a contract. It must always be first shown that a contract exists, before it is even permissible to offer evidence of a usage. To extend the doctrine of usage, at this late day, to the formation of contracts, to allow it to have weight in determining the question of whether there was or was not a contract formed and in existence, would be to give a force and effect never given it by any respectable court in any well considered case, so far as we are aware, and directly in the teeth of the doctrine heretofore announced by this court. 27 Am. & Eng. Ency. of Law (2d ed.) 714; *Harper v. Calhoun,* 7 How. (Miss.) 214.

There is no wiser or better settled rule of law than that a usage cannot prevail against a positive rule of substantive law. We are aware that certain text writers undertake to make a distinction between those rules of law enacted by statute, and those established by the courts. But, we submit, there is no ground for such distinction, either in reason or authority. Statutory law is no more binding on the citizen or the courts, than well established positive law. The Mississippi case first cited, fully recognizes and accepts this doctrine, and is binding on this court. A brief resume compiled by a law writer, of what has been said on this subject by a few eminent judges, may not be out of place. It is as follows:

"In 1790, Lord Mansfield, speaking of evidence of custom in an action on a bill of exchange, said: 'The point of law is here settled, and when once solemnly settled, no particular usage

shall be admitted to weigh against it. This would send every-thing to sea again! *Edie v. East India Co.,* 1 W. Black. 295; 2 Burr. 1216. In *Eager v. Atlas Insurance Company,* 14 Pick. 141, Wilde, J., said: 'Now it seems to me very clear that no particular usage opposed to the established principles of law can be sustained.' In *Warren v. Franklin Insurance Company,* 104 Mass. 518, Chapman, C. J., said: 'This being the rule of law as to damages, the custom of a particular port could not vary it.' In *Bargett v. Orient Insurance Company,* 3 Bosw. 385, Bosworth J., said: 'No usage can exist or be proved by which the liabilities of parties to a written contract will be greater or less than the settled law of the state has adjudged them to be.' In *Homer v. Dorr,* 10 Mass. 26, the Supreme Judicial Court of Massechusetts said: 'Evidence of custom and usage is useful in many cases to explain the intent of parties to a contract. But the usage of no class of citizens can be sustained in opposition to principles of law.' In *Rapp v. Palmer,* 3 Watts, 178, Rogers, J., said: 'Although a usage is often re-sorted to for explanation of commercial instruments, it never is or ought to be received to contradict a settled rule of commer-cial law.' In the *Pacific,* 1 Deady, 17, Deady, J., said: 'The law, and not such a custom ascertains and limits the rights and liabilities of shippers and common carriers.' In *Schieffelin v. Harvey,* Thompson, J., said: 'The established principles of law cannot be controlled by custom.' In *Minnesota Central Rail-way Company v. Morgan,* Miller, J., said: 'No custom can be established which contravenes a well settled principle of law.' In *Raisin v. Clark,* 41 Md. 158, Miller, J., said: 'A usage in contravention of a well-settled and salutary rule of law cannot be sustained by courts of justice.' In *Thompson v. Riggs,* 5 Wall. 663, Mr. Justice Clifford said: 'Usage contrary to law, or inconsistent with the contract, is never admitted to control the general rules of law or the real intent and meaning of the parties.' In *Hone v. Mutual Safety Insurance Company,* 1 Sandf. 137, Sandford, J., said: 'We find it clearly settled that

a general usage the effect of which is to control rules of law, is inadmissible; so of one which contradicts a general rule of commercial law.' In *Frith v. Barker*, 2 Johns. 327, Kent, C. J., said: 'Though usage is often resorted to for explanation of commercial instruments, it never is, nor ought to be, received to contradict a settled rule of commercial law.' In *Reed v. Richardson*, 98 Mass. 216, the court said: 'The usage in question is objectionable and invalid, for it tends to contravene the fixed rule of law.' In *Barnard v. Kellogg*, 10 Wall. 383, Mr. Justice Davis said: 'It is well settled that usage cannot be allowed to subvert the well settled rules of law.' In *Southwestern Freight and Cotton Press Company v. Stannard*, 44 Mo. 71, Wagner, J., said: 'Evidence of custom, however, is never admissible to oppose or alter a general principle or rule so as to make the rights and liabilities of parties other than they are at law.' In *Meaher v. Lufkin*, 21 Texas 383, Wheeler, J., said: 'There is nothing in the objection that proof of a custom was admitted to vary the law of the land. That, it is admitted, cannot be done.' In *Stillman v. Hurd*, 10 Texas 109, Hemphill, C. J., said: 'The custom, if any such exists, is in contravention of established law.' In *Lockhart v. Dewees*, 1 Texas 535, Lipscomb, J., said: 'It has never, it is believed, been held that an acknowledged rule of law could be subverted by local custom.' In *Brown v. Jackson*, 2 Wash. C. Ct. 24, Mr. Justice Washington said: 'The law upon this subject is settled. It would, therefore, be improper to let a contrary usage be proved, which is only proper in doubtful cases.' 'The practice of the New York stock market, as testified to by one of the witnesses,' said Ewing, C. J., in a New Jersey case, 'can have no weight on this question. We are to seek what was required by the grave and steady rule of law, not what would satisfy the eagerness of speculation, grasping its object on one hand with bold temerity, and parting from it on the other with suspicious haste. A mournful history tells us there were at that time in the stock market many practices which neither the law nor good morals

could uphold. *McCourry v. Suydam,* 10 N. J. L. 245.' In *Inglebright v. Hammond,* 19 Ohio 337, Caldwell, J., said: 'Evidence of custom may properly be given to explain and give the proper effect to the contracts and act of parties, but it would be carrying the doctrine too far to permit a custom to change the title to property contrary to an established rule of law.' In *Smetz v. Kennedy,* Riley 218, EVANS, J., said: 'No custom or usage can be allowed which repeals the law of the land.'

"These expressions are not ambiguous; no other meaning can be given to them except this: that a custom or usage which changes what would otherwse be the situation of the parties, or alters to any extent their rights according to the rules of law applicable to such cases, is invalid and ineffectual. The meaning of the terms 'rules of law,' 'principles of law,' 'well-settled law,' 'established rules of law,' as they are used by the judges whom we have just cited, is not difficult to arrive at. They do not refer to the laws established by the legislature, and which we find in the statute-book; they refer to the rules adopted and the doctrines established by the courts for the conduct of the citizen and the preservation and enforcement of his rights—the precedents which we find in the reports; in short, the common law of the land."

It will be noted, too, that all the cases refer to usages as admissible only to interpret a contracts, as an aid in ascertaining the intent and meaning of the contract already formed, and not as to whether a contract had or had not been formed.

*Watkins & Watkins,* for appellee.

There was a custom existing among cotton men to the effect that a contract for the sale of cotton is not closed until the message of acceptance is actually received by the offerer.

It is hard to perceive how the testimony in reference to the existence of a custom or usage could be more direct or more explicit. The witnesses testified positively in reference to the existence of the custom, testified upon their own knowledge and their testimony is actually uncontradicted.

The fact of the existence of the custom was as well and as firmly established as the fact of the sending of the telegram itself; and it is too late now for the appellant, after having allowed the testimony to go to the jury uncontradicted, to say in this court that there was no testimony to go to the jury upon the question of the existence of the custom.

It is now contended by the appellant that when Morrow delivered to the telegraph company his telegram of acceptance that the contract was irrevocably closed and that this could not be altered by custom or usage, because it is said custom and usage can never change or modify or contravene established legal rules and maxims.

Before entering upon a discussion of this question, it would be well to say that the terms "custom" and "usage" have different meanings. In order for a custom to be valid, it must have existed for such a length of time as the memory of man runneth not to the contrary. With usage, however, it is different. Usage need only have existed for such a length of time as to have become in general use and thereby to raise presumptive knowledge of all parties of the same engaged in that particular business.

We will further call the attention of the court to the fact that the usage in question for which we are contending in this case, is general and not merely local usage; that it is not confined to any mere locality or section, but so far as the record shows, is in effect the world over, wherever cotton is bought and sold.

The proposition announced by the appellant that no custom is valid which contravenes a principle of the common law is incorrect. Even if the rule be as contended by appellant, that the rule has many exceptions, among the number being, that if the usage or custom sought to be established contravenes no statute nor principle of public policy, but is incorporated in the contract of the parties, then it is perfectly valid.

The custom or usage which we have established in this case as a matter of fact contravenes no principle or maxim of the common law.

On page 474, Mr. Lawson, in his work on Custom and Usage, uses the following language: "We have thought it well in this section, at the risk of repeating the language of courts and judges already set out in former portions of this book, to bring together those cases which have decided that certain rules of law cannot be altered or controlled by a different custom, whenever, and wherever only, no case sustaining the admissibility of usage in conflict with that particular rule can be found in the reports. These cases are not numerous; but the fact that they are, in principle, in direct conflict both with the weight of authority and with the views of the writer, would seem to justify their examination in this place." The author then proceeds to examine at length the cases holding dogmatically that no usage or custom can alter the fixed principles of the common law, and after a most exhaustive and discriminatory discussion on page 485, § 248, arrives at the following rule:

"In the light of this principle, the meaning of the rule that a usage or custom must not conflict with the law becomes clear, and the rule itself easy of application. The language of the judges from whose opinions we have cited in § 226, is incorrect, because it is unqualified. A usage or custom, as we have already shown, is not in–alid because it is different in its effect from the general principles of law applicable to the particular circumstances in its absence. But if it conflicts with an established rule of public policy which it is not to the general interest to disturb; if its effect is injurious to the parties themselves in their relations to each other; if, in short, it is an unjust, oppressive, or impolitic usage, then it will not be recognized in courts of justice, for it will lack one of the requisites of a valid custom that is to say, reasonableness."    29 Am. & Eng. Ency. of Law (2d ed.) 380.

Mayes, J., delivered the opinion of the court.

Floyd Willis was engaged in buying and selling cotton in the city of Jackson, Miss. On the 5th day of December, 1906, he sent a telegram to Knight, Yancey & Co., of Mobile, Ala., sub-

mitting to them an offer to sell certain cotton which he then owned. The message was duly transmitted by the telegraph company to Mobile and duly delivered. On receipt of the telegram Knight, Yancey & Co. wired Willis, accepting the offer. This message of acceptance by them was duly delivered to the telegraph company at Mobile, and by it sent to Willis, at Jackson, and received at the Jackson office at 1:05 p. m. At 2 o'clock of the same day this message of acceptance had not been delivered to Willis although his office was within a short distance of the telegraph office. About 2 o'clock, and while this message lay undelivered in the Jackson office, Morrow, agent and manager of the firm of Knight, Yancey & Co., of Mobile, called Willis over the phone, and according to Mr. Willis' own statement asked him (Willis) if he had received the acceptance of his offer; that is, the acceptance he sent by telegraph. Willis replied to him over the phone that he had not. Whereupon Morrow said he was very glad of it, and would then withdraw his acceptance, to which Willis assented. Willis, up to this time, had not received the telegram of acceptance from the telegraph office, and went immediately to the telegraph office, called for the telegram, and the same was delivered to him. The same cotton was subsequently sold about 10 o'clock at night to the same parties, at a loss of some $218 to Willis, and the object of this suit is to hold the telegraph company liable for the loss thus sustained by Willis. There was a verdict in the court below in favor of the plaintiff, from a judgment on which the telegraph company appeals.

It is settled law and seems to be conceded on both sides, that under ordinary circumstances the acceptance of Willis' offer was complete when the telegram of acceptance of the proposition made was delivered by Knight, Yancey & Co. to the telegraph company in Mobile, and that the agreement then and there became a binding contract according to the express terms contained in the telegram from Willis. The main contention of apepllees is that, while this is ordinarily true, yet in this particular instance

the contract was not a binding contract, for the reason that, according to the custom prevailing among men engaged in the cotton business, the acceptance of the offer did not become binding until the actual delivery of the telegram by the telegraph company into the hands of Willis.  It is claimed on the part of appellee that this is a general custom or usage prevailing among those engaged in the cotton trade, recognized by and acted under by them, and for this reason there was no contract until actual delivery to Willis, and, because there was no contract, the loss to the plaintiff was occasioned directly by the negligence of the telegraph company in failing to properly deliver the message. On the other hand, it is claimed by the telegraph company that there was a binding contract at the time when this telegram was delivered in Mobile, and that any action taken by Mr. Willis occasioning loss to him was caused by his own act in releasing Knight, Yancey & Co. from a valid contract; that they cannot be held responsible for it, because no loss occurred by reason of their negligence.  According to Willis' own testimony, he was advised of the fact that there had been a telegram of acceptance before the order was cancelled over the telephone.

The contract made by the parties by virtue of these telegrams is clear, unambiguous, and valid, unless the so-called usage or custom can be invoked to relieve the parties from the legal effect of their acts.  There is no such uncertainty about this contract as makes it necessary, because of indeterminate terms, to resort to custom or usage in order to understand exactly what was meant; but the contract is express in its terms, unambiguous, and became binding on the parties when the telegram of acceptance was delivered to the telegraph company in Mobile. It would be in the highest degree impolitic, and be the cause of introducing interminable confusion into contracts, if, when the terms of a contract are express, clear, and valid under the law, its legal effect could be controlled by some local or trade custom.  Our court has long since been committed to this wise doctrine.  *Shackleford v. N. O., J. & Great Northern Ry.,* 37

Miss. 202. In the case of *Hopper v. Sage,* 112 N. Y. 530, 20 N. E. 350, 8 Am. St. Rep. 771, citing many authorities, the court says: "Usage and custom cannot be proved to contravene a rule of law, or to alter or contradict the express or implied terms of a contract free from ambiguity, or to make the legal rights or liabilities of the parties to a contract other than they are by the terms thereof. When the terms of a contract are clear, unambiguous, and valid, they must prevail, and no evidence of custom can be permitted to change them." In the case of *Shackleford v. New Orleans, Jackson & Great Northern Railroad Company,* 37 Miss. 202, the court has said: "These usages, many judges are of the opinion, should be sparingly adopted by the courts as rules of law, as they are often founded on mere mistake, or on the want of enlarged and comprehensive views of the full bearings of principles. Their true office is to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of the contracts, arising, not from express stipulations, but from mere implications and presumptions and acts of a doubtful and equivocal character, and to fix and explain the meaning of words and expressions of doubtful or various senses. On this principle the usage or habit of trade, or conduct of an individual, which is known to the person who deals with him, may be given in evidence to prove what was the contract between them." 2 Greenleaf's Ev. § 251, and note 5. And the court further says that, where a custom or usage is resorted to, such customs must be certain, uniform, reasonable, and not contrary to law. To the same effect is 2 Page on Contracts, p. 928: "The true and appropriate office of a usage or custom is to interpret the otherwise indeterminate intention of parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulations, but from mere implications, assumptions, and acts of a doubtful or equivocal character."

Where the contract is definite and certain, the obligations of a party, by reason of the contract, became fixed by law by the

terms of the contract which they have entered into, and, where there is nothing uncertain left in the contract, usage or custom has no place. There are many instances in which a contract may be explained and controlled by a custom prevailing among men engaged in a certain line of business, but this is not one of them. We think the court below erred in refusing to exclude all evidence in reference to the damages arising out of the failure of appellant to deliver the telegram.

For this reason, the case is reversed and remanded.

*Reversed.*