## WARE v. MARTIN.

Division A.    Jan. 15, 1951.

No. 37784 (49 So. (2d) 833)

Breland & Whitten, for appellant.

502

Carlton & Henderson, for appellee.

**Kyle, J.**

O. R. Martin, the appellee, was the owner of approximately 500 acres of land in Tallahatchie County. Martin leased the land to J. L. Ware, the appellant, for the year 1949. The lease agreement was an oral agreement entered into sometime prior to the first day of January, 1949, and under the terms of the agreement Ware was to pay to Martin as rent for the year 1949 ¼ of the cotton and ⅓ of the corn produced on the land. Martin agreed to make advancements of money to Ware to enable him to plant, cultivate and gather his crop. Ware purchased 3 Ferguson tractors, 2 plows, 1 middlebuster, a harrower and a jack for use in carrying on the farming operations, from King Tractor & Implement Company. Martin advanced to Ware the necessary funds to make the down payment, which was 40% of the purchase price. Martin made other advancements to Ware during the late winter and spring amounting in all to $7,013.30, which were evidenced by notes and secured by a chattel mortgage deed of trust. About the middle of May Ware, who had apparently been unable to procure a sufficient amount of labor to cultivate the land properly, proposed to turn back to Martin all of the land except that part of the same lying on the east side of Alexander Lake, which contained approximately 100 acres. Martin, whose home was at Corinth, Mississippi, had a full discussion of the matter with Ware on Thursday, May 25th, and Friday, May 26th, and a new contract was negotiated between them, under the terms of which Ware was to turn back to Martin all of the land except that part of the same lying on the east side of Alexander Lake, and Ware was to pay to Martin as rent for the land lying east of the Lake ¼ of the cotton and ⅓ of the corn produced on the land. Ware, according to Martin's testimony, agreed to

turn over and deliver to Martin the three Ferguson tractors and other equipment mentioned above, and on which there was due and owing to the Universal C. I. T. Credit Corporation a balance in the sum of $4,253.60, which Ware agreed to pay and discharge out of the proceeds of his crops. Martin agreed to cancel and surrender the notes and accounts and chattel deed of trust which he held against Ware. Martin was not to be required to make any additional advancements to Ware during the crop season.

This new contract was negotiated between the parties on the street in the town of Phillip, on May 26th. A written memorandum of the new rental contract covering the land on the east side of Alexander Lake was made by Martin and signed by Martin and Ware. Martin also signed a receipt, which read as follows: "May 26, 1949. Received of J. L. Ware accounts & notes in full to date. Tractors & Tools to Bee Delivered to Mr Mr Mor on Lake Side

"O. R. Martin

"Witness Jno Sanders

"Three Tractors all Tools Hoes & Cultivator"

According to Martin's testimony Ware was to execute a proper bill of sale of the tractors and other equipment, and Martin was to cancel and surrender his notes and chattel deed of trust, which he did not have with him at the time the new contract was negotiated and agreed to by the parties on the street at Phillip on May 26th.

Martin returned to Corinth and on the following day had prepared in the office of King Tractor & Implement Company, a bill of sale to be executed by Ware covering the 3 Ferguson tractors and other equipment which Ware was to turn back to him. The bill of sale contained the following provisions: "There is a balance of indebtedness of the amount of $4253.60 that I will paid on or before September 15, 1949." This form bill of sale was prepared on Saturday, May 27th, and on the following day Clyde King, who was Martin's son-in-law, carried the

form bill of sale which was to be executed by Ware, and the notes and chattel deed of trust, which Martin held against Ware, to Tallahatchie County. Ware executed the bill of sale and Clyde King delivered to him the notes and chattel deed of trust. The bill of sale was signed by Ware and the notes and deed of trust were surrendered to Ware on Sunday, May 28th.

The installment payments due and owing to the C. I. T. Credit Corporation were not paid when due. A writ of replevin was issued and Martin was forced to make arrangements to meet the installment payments himself.

On September 2, Martin filed his bill in the chancery court of Tallahatchie County against Ware for the purpose of enforcing a landlord's lien upon the personal property and agricultural products produced by Ware for the payment of the above mentioned sum of $4253.60, and in his bill asked that such lien be specifically recognized and declared by a decree of the court and that the defendant be prohibited from dealing with the property and agricultural products in any manner prejudicial to the rights of the complainant. Martin also prayed for general relief.

The case was tried before the chancellor at the November term of the court. Martin's testimony on his own behalf was substantially as stated above. The complainant introduced Ware as an adverse witness for the purpose of proving by Ware himself that the bill of sale mentioned above had been executed by Ware. Ware admitted that he had signed the instrument.

After the complainant had rested his case Ware testified in his own behalf and denied that he had agreed to pay the balance of $4253.60 due and owing to the Universal C. I. T. Credit Corporation. Ware, in fact, denied that anything had been said at the time the new contract was negotiated about him paying the balance that was due and owing on the tractors. The bill of sale of the tractors, which Ware had signed on Sunday, May 28th, when the notes and chattel deed of trust were

surrendered to him, recited that ''there is a balance of indebtedness of the amount of $4253.60 that I will paid on or before September 15, 1949''. Ware testified that those words did not appear in the instrument when he signed it. Ware denied that he owed Martin anything other than ¼ of the cotton produced on the land lying east of Alexander Lake which he had retained and cultivated under the new agreement.

Objection was made by the defendant's attorneys to the introduction of the bill of sale executed by Ware, which was dated May 26th, but which the proof showed was actually signed by Ware on Sunday, May 28th, on the grounds, first, that a copy of the bill of sale had not been attached to the bill of complaint, and, second, that the instrument was void because it had been executed on Sunday.

The theory contended for by the complainant was that complainant's claim was not based upon the bill of sale, but upon the terms of the renegotiated agreement which had been entered into by the parties at Phillip on Friday, May 26th; that the sum of $4253.60, which represented the unpaid balance due and owing to the Credit Corporation on the tractors, was a stated account, which the parties agreed that Ware should pay in full settlement of the $7013.30 debt which Ware owed to Martin at the time the new contract was entered into, and that the bill of sale signed by Ware constituted written evidence of a part of the agreement which had been negotiated and agreed to by the parties on the preceding Friday.

There is a direct conflict in the testimony of the complainant and the testimony of the defendant as to the item of the alleged agreement relating to the payment of the $4253.60 balance owing to the Universal C. I. T. Credit Corporation on the purchase price of the tractors. Martin testified positively that Ware agreed to pay off the balance due on the tractors, if Martin would release him from the balance of his indebtedness, and Martin testified that that was a part of the agreement arrived

at when the parties negotiated the new contract on Friday, May 26th, when Martin agreed to cancel and surrender the notes and the chattel deed of trust executed by Ware while the original contract was in force.

The chancellor, after hearing the testimony of the witnesses, found for the complainant. The chancellor found, and so stated in his decree, that the defendant was indebted to the complainant for the amount of the balance owing on the tractors, and that the complainant held a statutory lien upon all of the agricultural products produced by the defendant on the land owned by the complainant during the year 1949. And in his decree the chancellor ordered that the defendant be prohibited from dealing with the property in any manner detrimental and prejudicial to the rights of the complainant, and that the defendant deliver to the complainant all crops produced upon the property to the amount of $4253.60, for which amount judgment was entered against the defendant.

Appellant in his brief contends that appellee's suit was based upon a written contract which was executed on Sunday and was for that reason void, and that appellee was not entitled to recover anything. And on this point appellant cites the case of Goletti, Inc., v. Andrew Gray Company, 125 Miss. 646, 88 So. 175. Appellant also contends that the indebtedness decreed to be owing by him to the appellee was an indebtedness owing by the appellant to Universal C. I. T. Credit Corporation for the unpaid balance of the purchase price of the three tractors, and that there was no landlord's lien in favor of the appellee for this amount. And on this point appellant cites the cases of Ellis v. Jones, 70 Miss. 60, 11 So. 566, and Carberry v. Howell, 114 Miss. 549, 75 So. 383.

We think that the chancellor was correct in holding that the contract sought to be enforced in complainant's bill of complaint was not void on the ground that it was a contract entered into on Sunday. The testimony of both the complainant and the defendant shows that the terms of the renegotiated contract entered into between

the parties were all agreed upon in the conferences held on Thursday and Friday, and that the final agreement was entered into at Phillip on Friday, May 26th. The parties did not see each other on Sunday, May 28th, when the appellant actually signed the bill of sale. It is undoubtedly true that ██ █ a contract entered into in this state on Sunday is contrary to public policy and void, but, as we view the matter, the contract which appellant seeks to avoid as a Sunday contract in this case was not a Sunday contract, but a contract entered into on a secular day, which was later evidenced by an instrument of writing signed on Sunday. This Court in the case of Foster v. Wooten, 67 Miss. 540, 7 So. 501, in which the facts were somewhat similar to the facts now before us, said: "The evidence showed quite clearly that the sale of the stock by L. D. Lewis to A. F. Foster occurred on Friday. The execution of the bill of sale on the Sunday following was not the consummation of the sale; it was only the manufacture of the evidence of the antecedent sale."

We think that the chancellor was also justified in holding that the complainant was entitled to a landlord's lien to enforce the payment of the $4253.60 indebtedness, which the chancellor found that the appellant had agreed to pay to the Universal C. I. T. Credit Corporation for the purpose of clearing the title to the tractors and other equipment which had been turned over to the appellee in settlement of the much larger indebtedness which the appellant admittedly owed to the appellee at the time the renegotiated contract was entered into. The chancellor in effect found that the appellee agreed to take the tractors and reduce the debt which appellant owed him to the above mentioned amount of $4253.60 which was the amount still due and owing to the Universal C. I. T. Credit Corporation, and that appellant agreed to pay that amount out of his crop.

There was no dispute in the testimony as to the amount of the indebtedness of $7013.30 which was due and owing

by the appellant to the appellee on account of advancements made to the appellant prior to the negotiation of the new contract. Of that amount $2609.92 had been advanced by the appellee for the purpose of enabling the appellant to make the down payment on the tractors and equipment hereinabove mentioned, and the remaining $4403.38 represented other advancements for the purchase of planting seed, feed, fertilizer and for other expenses incurred by the appellant in carrying on his farming operations. To secure the payment of all of these amounts the appellee held a landlord's lien on all of the agricultural products to be produced by the appellant on the lands rented from the appellee during the year 1949. It is not reasonable to suppose that the parties intended that the appellee should cancel his entire indebtedness of $7013.30, which was secured by a landlord's lien upon the crops to be produced upon the land, and accept in settlement of that indebtedness the three tractors and other equipment described in the bill of sale on which there was still outstanding a purchase money lien in favor of the Universal C. I. T. Credit Corporation for $4253.60, which the appellant had agreed to pay out of his crops, and yet be left without a remedy to enforce his claim against appellant, if appellant failed to pay off the indebtedness.

We do not think that the principles laid down in Ellis v. Jones, supra, and Carberry v. Howell, supra, are applicable to the situation that we now have before us.

The debtor and creditor relation that existed between the appellant and the appellee in all of the transactions involved in this litigation was that of tenant and landlord. The indebtedness due and owing by the appellant to the appellee was for money advanced to the tenant by the landlord to enable the tenant to carry on his farming operation. As a part of the consideration for the cancellation by the appellee of the $7013.30 indebtedness due and owing to him under the original contract, the appellant turned over and delivered to the appellee

the three tractors and other equipment described in the bill of sale hereinabove mentioned and agreed to pay the balance of the purchase money lien indebtedness due and owing to the Universal C. I. T. Credit Corporation out of his crop, so that the appellee would have an unencumbered title to the property thus delivered to him. The appellant accepted the benefits of the renegotiated contract and having failed to pay off the purchase money lien claim against the property held by the Universal C. I. T. Credit Corporation so as to clear the title to the same, as he had agreed to do, should not have been permitted to say that the debt which he owed was a debt due and owing to a third party and that the landlord's lien did not apply to the payments which the appellee was required to make because of the appellant's failure to comply with his own obligation under the renegotiated contract.

The debt which the appellee seeks to collect in this case is a debt which the chancellor found to be due and owing to the appellee as landlord for money advanced to appellant as a crop furnish. The chancellor's finding was based upon the principle that unless and until the appellant paid the $4253.60 which represented the balance still due and owing on the tractors, as he had agreed to do, he was still indebted to the appellee for the above stated sum of $4403.38, which was admittedly owing to the appellee on account of advancements of money made to the appellant as a crop furnish prior to the negotiation of the new contract. We think that there was sufficient evidence to justify the finding of the chancellor that the appellant was indebted to the appellee in the sum of $4253.60 for money advanced as a crop furnish, and that the appellee was entitled to a landlord's lien on the agricultural products produced on the lands owned by the appellee, to secure the payment of the indebtedness.

The decree of the chancellor is therefore affirmed.

Affirmed.