MARTIN *v*. LEFLORE BANK & TRUST CO., et al.

Feb. 15, 1954

No. 38882 53 Adv. S. 17 70 So. 2d 66

*Carlton & Henderson,* Sumner, for appellant.

*Alfred Stoner,* Greenwood, for appellee Leflore Bank and Trust Company.

*Odom & Odom,* Greenwood, for appellees Barnwell & Flowers and Buford & Chassaniol.

110

*Bell & McBee,* Greenwood, for appellees Mrs. Leone Liebkemann Crow and Julia Mounger, Administratrix of the Estate of E. L. Mounger, Deceased.

Lee, J.

This is a sequel to Ware v. Martin, 210 Miss. 500, 49 So. 2d 833.

During the year 1949, Ware was a tenant of Martin and agreed to pay one-fourth of the cotton as rent. After Martin had made a substantial furnish, because of Ware's inability to get sufficient labor to cultivate all of the land, the parties, on May 26th re-negotiated their contract. Under the new agreement, Ware was to pay as rent one-fourth of the cotton produced, and to pay to Martin, on or before September 15, $4,253.60 on account of advances theretofore made. About September 2nd Martin filed his suit in the chancery court of Tallahatchie County to establish his landlord's lien on the agricultural products which had been, and were then being, raised on the land. As a result of that suit, Ware v. Martin, supra, it was held that Ware was indebted to Martin in the sum stated above, and that Martin had a lien on the agricultural products for the payment of that indebtedness.

In the meantime, between the date of the filing of that suit and its determination in November 1949, the 17 bales of cotton now in controversy were sold by Ware. Following the decision in Ware v. Martin, supra, Martin filed the present suit in the Chancery Court of Leflore County to enforce his landlord's lien, as adjudged in that case, against these 17 bales of cotton.

The defendants named and the several recoveries sought against them were as follows: R. W. Barnwell, Jr. and R. H. Flowers, 6 bales; L. R. Crow, 7 bales; L. H. Buford and Emmett J. Chassanial, 2 bales; E. L. Mounger, 2 bales; and the Leflore Bank & Trust Company for $632 received by it from Ware in satisfaction of the bank's deed of trust on the crop.

The answers of the defendants, in effect, stated that Martin permitted Ware to have possession of the cotton, to store it in exchange for negotiable warehouse receipts;

that, in each instance, checks for one-fourth of the value of the cotton were issued by the purchasers and delivered to Martin in payment of his rent; that he accepted and cashed such checks; and that he is estopped from asserting any further interest in the cotton. In addition, the bank said that, after sales of the receipts and the forwarding of checks to Martin, Ware deposited the checks for his three-fourths interest with it and another bank, and, in due course, paid his loan from such deposits; and that, under the circumstances, it was not liable in any amount.

E. L. Mounger died before the suit was filed, and his administratrix, Miss Julia Mounger, was made a party. Her answer stated that Mounger's death occurred on October 28, 1950, prior to the filing of the original bill; that letters of administration were issued to her on November 20, 1950; that no claim was probated against the estate, and that it was barred; and that the estate was not indebted in any amount.

Pershing Chassanial was substituted in the place of Emmett J. Chassanial.

L. R. Crow died after the service of process, and the cause was revived against Leona Liebkemann Crow, his sole and only heir. She made a motion to dismiss for the following reason: Crow died on June 6, 1951, two days after service of process on him. She took out letters of administration on August 1, 1951, and published notice to creditors in accordance with law. No claim was probated. On February 27, 1952, the final decree directed the payment of assets into her hands as the sole heir, and discharged her sureties. Subsequent to her final discharge, process was served upon her individually and not as administratrix on March 24, 1952. She asserted that under Section 611, Code of 1942, the administratrix had the right to defend the action, and, after the administration had been closed, Martin had

no cause of action against her, as an heir at law of the deceased Crow.

The evidence showed the following: Ware produced all of this cotton on Martin's land. He stored the cotton, obtained warehouse receipts, and effected sales by virtue of such receipts. The sales occurred between September 13th and November 8, 1949, and in each instance, the purchasers made checks to Martin for one-fourth, and to Ware for three-fourths, of the proceeds. On September 20th, Ware, by registered letter, mailed to Martin sales tickets, which showed that he had sold 4 bales to Barnwell and Flowers on September 13th and one bale to Crow on the 14th, and that the proceeds were prorated one-fourth to Martin and three-fourths to Ware, and enclosed checks for Martin's part. On October 6th, Ware, by registered letter, mailed to Martin sales tickets, which showed that he had sold 3 bales to Crow on September 29th and one bale to Crow on October 5th, and that the proceeds were prorated one-fourth to Martin and three-fourths to Ware, and enclosed checks for Martin's part. On October 22nd, Ware, by registered letter, mailed to Martin sales tickets which showed that he had sold two bales to Crow on October 19th and two bales to Barnwell and Flowers on the 21st, and that the proceeds were prorated one-fourth to Martin and three-fourths to Ware, and enclosed checks for Martin's part. On November 9th, Ware, by registered letter, mailed to Martin sales tickets, which showed that he had sold 2 bales to Buford and Chassanial on October 31st and 2 bales to E. L. Mounger on November 8th, and that the proceeds were prorated one-fourth to Martin and three-fourths to Ware, and enclosed checks for Martin's part. The sales tickets, in each instance, showed the numbers of the bales, their weights, the prices paid, that Ware was the seller, and the proration of the proceeds between Martin and Ware.

Martin received the registered letters and their contents, namely, the sales tickets and checks. He did not

disavow to any purchaser the right of Ware to sell the cotton. He neither made the purchasers parties to his pending suit, notwithstanding notice that practically all of the sales had been made prior to the trial of that cause, nor did he in any way then assert his lien against the cotton for which Ware had been paid a three-fourths interest in the proceeds. On the contrary, he endorsed the checks and cashed them.

■■■ Section 908, Code of 1942, makes the lien of the landlord on the agricultural products of the leased premises to secure the payment of rent, money advanced, and for the fair value of all advances for supplies, paramount to all other liens. The validity of such lien and its all inclusive features have been settled beyond peradventure. Henry v. Davis, 60 Miss. 212; Fitzgerald v. Fowlkes, 60 Miss. 270; Campbell v. Farmers Bank of Boyle, 127 Miss. 668, 90 So. 436; Tennessee Stock Land Bank v. Bank of Greenwood, 179 Miss. 534, 172 So. 323; Phillips v. Box, 204 Miss. 231, 37 So. 2d 266; Lineburger Bros. v. Hodge, 212 Miss. 204, 54 So. 2d 268.

But, of course, such lien can be waived. Seavey & Sons v. Godbold, 99 Miss. 113, 54 So. 838; Phillips v. Thomas, 128 Miss. 729, 91 So. 420; Judd v. Delta Grocery & Cotton Co., 133 Miss. 866, 98 So. 243; Tonnar v. Washington & Issaquena Bank, 140 Miss. 875, 105 So. 750; McGee v. Carver, 141 Miss. 463, 106 So. 760; Quiver Gin Co. v. Looney, 144 Miss. 709, 111 So. 107; Weil Bros. Inc. v. Keenan, 180 Miss. 697, 178 So. 90; Federal Land Bank of New Orleans v. Southern Credit Corp., 188 Miss. 192, 192 So. 827.

In Judd v. Delta Grocery & Cotton Co., supra, F. E. Judd had rented land to his son E. W. Judd for the year 1920. After the son had sold to the appellee therein cotton produced on the plantation, without payment of the rent, the father brought suit to enforce his landlord's lien. The following excerpt from the opinion in that case is very pertinent here: ''There is also testimony

in the record of the appellant that during the fall of 1920 he received a letter from his son, stating he had disposed of a certain number of bales of cotton, and clearly showing that he (the tenant) was in entire control of the cotton, and disposed of it as he saw fit. In short the record shows that the course of dealing between the landlord and tenant was that the tenant disposed of the crop with the knowledge of the landlord, that the landlord asserted no rights as to its disposition, but permitted the tenant to control it, and that the tenant paid him money rent for the place. This course of dealing, this knowledge and permission of the landlord, constitute in effect an appointment of the tenant as his agent to dispose of the cotton on which the lien existed. If the tenant failed to carry out this trust and pay the rent, then the loss must fall on the landlord who clothed him with this authority, rather than on an innocent party.''

In the case here, Ware paid the rent, but did not pay the advances. But the above principle applies.

In Federal Land Bank of New Orleans v. Southern Credit Co., supra, the contract stipulated that Cresswell should sell the cotton with the consent of the Bank in writing. However, in view of the fact that he had ginned, stored, received warehouse receipts, and sold cotton theretofore, without the written consent of the Bank, it was held that the Bank had acquiesced in his practice, and had therefore waived its lien insofar as an innocent purchaser for value without notice was concerned.

██ █ Because of his inaction or indifference, as shown in the statement of facts, it must be held that Martin, in effect, acquiesced in the sale by Ware of cotton to the several purchasers, and therefore, as to them, he waived his landlord's lien. His acquiescence extended to the division and proration of the proceeds, namely one-fourth to himself and three-fourths to Ware. He is in

no better position to make demand from one who received the proceeds from Ware's three-fourths than he is to demand the same from the purchasers of the cotton. So likewise, his inaction or indifference cut him off from any valid claim against the Bank.

The chancellor dismissed the bill as to the administratrix of the Estate of E. L. Mounger and as to Mrs. Crow, the sole heir of L. R. Crow, for the reasons stated in their answer and motion and dismissed it as to all other defendants at the conclusion of the evidence for the complainant.

Mounger and Crow were purchasers of cotton. In view of the conclusion that appellant acquiesced in all sales, and therefore, waived his lien, it is obvious that he could not maintain his suit against either Mounger or Crow. Without deciding whether the chancellor was correct in dismissing the suit as to those defendants on the grounds stated, at any rate it is manifest that the right result was reached. Hence it is unnecessary to pass on those questions.

It therefore follows that the decree of the learned chancellor ought to be, and is, affirmed.

Affirmed.

All justices concur.