INZER, Presiding Justice,
for the Court:
Stevenson-Whisenhunt Corporation appeals from a decree of the Chancery Court of Leflore County dismissing its bill of complaint seeking an accounting from Ray Holeman and Staple Cotton Cooperative Association for cotton grown on land owned by appellant and leased to Holeman for the crop year 1973. We affirm.
From 1969 through 1973, Ray Holeman leased from Stevenson-Whisenhunt Corporation a portion of certain farm lands known as Cypress Lake Plantation on which cotton and other products were produced. A written contract was executed each year which contained almost identical provisions, including the following: “As a rental therefor second party agrees to pay the first party one-fourth (Vi) of cotton.”
In each of the years 1969 through 1973, Holeman as lessee of appellant’s land executed a marketing agreement with Staple Cotton Cooperative Association whereby he agreed to market all cotton produced by him on appellant’s land through Staple. In each contract for the years 1971, 1972 and 1973, Staple was specifically instructed to remit the proceeds as follows: “Twenty- *658 five percent (25%) proceeds to Stevenson-Whisenhunt Corporation pay direct for credit account and FNB Blytheville, Arkansas.” The remaining 75 percent of the proceeds were paid to producer Holeman.
In 1971, 1972 and 1973 Holeman forward contracted the cotton produced by him on appellant’s land. (A forward contract is a contract usually executed six to eight months prior to harvest by which a cooperative member sells cotton to be produced by him during the ensuing growing season at a set price agreed on at the time of the contract.) Prior to forward contracting in 1971, Holeman conversed with the president of appellant corporation, Mr. J. E. Stevenson, and obtained approval to go ahead and forward contract the crop. Mr. Stevenson’s testimony confirmed the fact that he was aware of the forward contract for the 1971 and 1972 growing season. Staple had bifurcated the checks and sent them to appellant who subsequently negotiated them.
On January 3,1973, Holeman talked with Whisenhunt and asked him about forward contracting the 1973 cotton crop and Whi-senhunt told him to do so, as he had been doing. On March 12, 1973, Holeman executed to Staple a sale and purchase agreement for the sale of cotton for that year, which provided for the payment of 32 cents per pound for all cotton raised by Holeman during the crop year 1973. In the interim between the execution of the forward contract in March 1973 and the fall of 1973 the price of cotton on the open market rose dramatically to approximately 80 cents per pound.
In July or August 1973 Holeman had a conversation with Stevenson and advised him at that time that he had contracted the cotton and Mr. Stevenson made no protest. In November 1973 approximately eight months after Holeman had sold the 1973 cotton crop by forward contract, and after the occurrence of the price escalation, appellant for the first time advised Staple and Holeman that it objected to the manner in which the cotton produced on its land had been sold and the marketing procedure whereby twenty-five percent of the sale proceeds were remitted to it and its assign-ee. Appellant urged Staple to hold one-fourth of the cotton in kind as its payment so that appellant could then sell the same on the open market.
By letter dated November 9, 1973, Hole-man was notified by Staple of appellant’s demand concerning the 1973 cotton production. The letter stated in part: .
In view of Mr. Stevenson’s letter and present position concerning the rental, we feel that all parties should understand that we feel your contract, marketing agreement and the prior course of dealings which had been accepted and acquiesced in by Stevenson-Whisenhunt Corporation is sufficient to support our position that all cotton produced on the property is covered by your sales and purchase contract.
Holeman delivered all the cotton to Staple as required by the forward contract and appellee Staple tendered Stevenson-Whi-senhunt the sale proceeds for the cotton in accordance with the authority and instructions contained in its marketing arrangement with Holeman for the year 1973 and previous years. However, Stevenson-Whi-senhunt did not negotiate the check as it had done in the previous years, but filed this action in the Chancery Court of Leflore County claiming a landlord’s lien on all the cotton grown and produced by Holeman on its land for the year 1973, requesting the court to render a decree for all of appellant’s interest in and to all cotton grown by Holeman upon appellant’s land for the year 1973, and requesting an accounting and judgment against Holeman and Staple for any sum found to be due appellant from them.
After hearing all testimony and reviewing the documentary evidence, appellant’s bill was dismissed with prejudice. The Chancellor stated in his opinion, among other things, the following:
I will make this much statement about the facts in this case: First, we must keep separate the two sets of questions. One is as to the marketing agreement and the other is as to the forward con *659 tracting. The Marketing Agreement itself by which Staple Cotton Cooperative Association was authorized to sell the cotton and to remit the proceeds, with 25 percent going to the landlord and its as-signee bank, is unquestioned in this case. Everyone admits that it was agreed to and was effective. Presumably the landlord would have had the right to cancel it at any time and any cotton not sold at that time would have been available to him in kind. That question is not before us. To this extent, that is that the landlord agreed that the cotton be sold and 25 percent of the proceeds remitted by Staple Cotton Cooperative Association, the rent contracts for each year were clearly supplemented or amended by the parties.
A completely separate question is the problem of the forward contracting, which is not contemplated or authorized by the Marketing Agreement. The first forward contract was on the 1971 crop. If there had not been a specific understanding between the landlord on one part and the tenant or Staple Cotton on the other, then I do not believe that the first forward contract would have been effective as to the landlord’s share. In other words I do not think that the tenant had the right to forward contract the landlord’s share of the crop, in the absence of some agreement or understanding, expressed or implied, or some acquiescence or course of dealing that would justify us in assuming this authority as a part of the contract or in working an estoppel against the landlord. As to this question it is my opinion that there has been such a course of dealing as to estop the complainant landlord from objecting to the forward contract. The course of dealing was such as to supplement the rental contract and authorize the execution of the forward contract by the tenant. The evidence is clear that the landlord was aware of the tenant’s forward contracting in 1971 and in 1972, and that the landlord did not make any protest or give any word of warning to either the tenant or to Staple Cotton with reference to those two years. There is in fact positive evidence that the landlord was advised in advance of the first contracting and agreed to it, and I believe that evidence is uncontradicted. The landlord accepted the advantages of the 1971 and 1972 forward contracts without any protest and without any questioning of the authority of the tenant or of Staple Cotton to effect those contracts. When the new rental contract for 1973 was executed the landlord was aware that the tenant might well follow his last two years practice and forward contract the crop. Nevertheless the landlord, preparing its own rent contract, failed to make any provision therein for or against forward contracting and failed to advise either the tenant or Staple Cotton that it did not wish the crop forward contracted. I consider that the landlord is estopped to complain of that which it knew would probably occur, whether or not the conversations of December 29,1972, and January 3, 1973, contained any specific reference to forward contracting.
The only error assigned and argued by appellant is that the lower court erred in overruling its motion to strike the affirmative defense, thereby allowing parol evidence of custom and usage to vary the terms of the written contract. Stevenson-Whisenhunt relies on Bank of Forest v. Capital National Bank, 173 Miss. 99, 160 So. 578 (1935), in which this Court stated that usage and custom cannot be proved for the purpose of contradicting the express terms of a contract free from ambiguity or to make the legal rights of the parties to a contract other than expressed by its terms. See also Postal Telegraph Co. v. Willis, 93 Miss. 540, 47 So. 380 (1908).
In distinguishing the above cases with the present appeal, appellees point out that in the Bank of Forest case there was no express authorization, whereas in the case at bar, Stevenson-Whisenhunt expressly authorized Holeman to market and forward contract the cotton. Moreover, appellant corporation approved this procedure by acquiescence in negotiating the proceeds check for a two-year period prior to 1973 on *660 almost identical contracts. The record clearly shows an acceptable prior course of dealing between the parties. The testimony of J. E. Stevenson is replete with admissions that he had knowledge of and acquiesced in Holeman’s business dealing with Staple. Mr. Stevenson admitted that Mr. Whisenhunt, secretary of the corporation, had full authority to act for and on behalf of the corporation and that he had authority to authorize the forward contracting of the cotton.
A parol agreement to waive or annul a particular stipulation in a written contract which has been mutually assented to and fully performed may be offered in evidence in defense of an action for a suit on the original written contract. Baylot v. Habeeb, 245 Miss. 439, 147 So.2d 490 (1962); Lee v. Hawks, 68 Miss. 669, 9 So. 828 (1891).
In Federal Land Bank of New Orleans v. Southern Credit Corporation, 188 Miss. 192, 192 So. 827 (1940), we held that a landlord’s lien on agricultural products may be waived by a course of dealings between a landlord and tenant, if it shows consent by the landlord to the disposition and sale of the crop. See also, Martin v. Leflore Bank & Trust Co., 220 Miss. 106, 70 So.2d 66 (1954).
In Judd v. Delta Grocery & Cotton Co., 133 Miss. 866, 98 So. 243 (1923), we held that where the testimony established that the landlord allowed his tenant to sell the cotton for several years and remit the rent established a course of dealing which constituted the tenant as his agent to dispose of the cotton.
In the case before us we not only have a course of dealing relative to the forward contracting of the cotton, but we also have the authorization by Whisenhunt for Holeman to go ahead and do as he had been doing for the past two years. Appellant made Holeman its agent for the purpose of entering into the forward contract for the sale of the cotton.
For the reasons stated we are of the opinion that this case should be and is affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON, P. J., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.